DEHUE COAL COMPANY, Petitioner,

v.

Laymond BALLARD; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 94–2369.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1995.

Decided Sept. 25, 1995.

(shares of director-employee are interested); his votes were not cast in the referendum.

**ARGUED:** John Payne Scherer, Sr., File, Payne, Scherer & File, Beckley, WV, for petitioner. Edward Lee Bullman, Shaffer & Shaffer, Madison, WV, for respondent Ballard; Barry H. Joyner, United States Department of Labor, Washington, DC, for respondent Director. **ON BRIEF:** Anthony J. Cicconi, Shaffer & Shaffer, Charleston, WV, for respondent Ballard; Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, United States Department of Labor, Washington, DC, for respondent Director.

Before LUTTIG and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge WILLIAMS wrote the majority opinion, in which Judge LUTTIG joined. Senior Judge BUTZNER wrote a dissenting opinion.

## OPINION

WILLIAMS, Circuit Judge:

In this appeal we consider whether a coal miner, affected by simple pneumoconiosis [1] but disabled by an unrelated respiratory condition, is "totally disabled due to pneumoconiosis" within the meaning of 30 U.S.C. § 901(a) (1988). An administrative law judge (ALJ) determined that Laymond Ballard suffered from a totally disabling respiratory condition, but denied him black lung benefits because the ALJ credited several medical opinions that Ballard's disability was not due to his coal mine employment. The Benefits Review Board (BRB) reversed and awarded benefits to Ballard on the ground that the medical opinions relied upon by the ALJ lacked probative value. Dehue Coal Company (Dehue) petitions for review of the BRB's decision and order. After careful consideration of the record before the ALJ and the BRB, we reverse the decision of the BRB and remand for entry of an appropriate order denying benefits to Ballard.

### I.

Ballard was born on November 13, 1938, and completed schooling through the eleventh grade. He was a coal miner for approximately sixteen years, working for Dehue from 1970 to 1985. In his last position, Ballard worked as an electric repairman, troubleshooter, and general underground laborer. On or about May 27, 1990, he left the coal mines shortly after the removal of his left lung due to cancer.

Prior to the lung surgery, Ballard had never missed work due to breathing problems, although he had smoked approximately one pack of cigarettes per day for more than thirty years. It was not until the period

---

1. Pneumoconiosis is classified as "simple" or "complicated". *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976). Simple pneumoconiosis is "generally regarded by physicians as seldom productive of significant respiratory impairment." *Id.* Complicated pneumoconiosis, however, involves progressive "massive fibrosis as a complex reaction to dust and other factors" and "usually produces significant pulmonary impairment and marked respiratory disability." *Id.*

immediately preceding his lung surgery that Ballard noticed any breathing difficulties. On May 8, 1990, Ballard underwent a routine physical examination by his family physician, Dr. Harry Fortner. At this initial office visit, Ballard complained of a recent twenty-pound weight loss and pain in his chest and left arm of about one-month duration, but denied any shortness of breath. Dr. Fortner ordered a chest x-ray which revealed a mass in the upper lobe of Ballard's left lung. He then referred Ballard to Dr. George Zaldivar, a pulmonologist who evaluated him, administered pulmonary function tests, and sent him to Dr. Sampath, who performed a pneumonectomy on Ballard.[2]

■ On July 17, 1990, Ballard applied for benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (the Act). During the administrative consideration of Ballard's claim, the Department of Labor identified Dehue as the responsible operator liable for payment of benefits under the Act.[3] Dehue disputed Ballard's claim and requested a hearing before an ALJ.

After conducting a hearing on the matter, the ALJ denied Ballard's claim for benefits on May 10, 1993. Based upon his review of the opinions of at least ten physicians and his review of x-ray, biopsy, and pulmonary function evidence, the ALJ concluded that Ballard suffered from simple pneumoconiosis and that he had a totally disabling respiratory condition. The ALJ further accorded Ballard the rebuttable presumption, as provided in 20 C.F.R. § 718.203(b) (1994), that his pneumoconiosis arose out of his coal mine employment. Nevertheless, the ALJ found Ballard ineligible for benefits because the record did not support the conclusion that his total disability was due to the pneumoconiosis. See 20 C.F.R. § 718.204. In particular, the ALJ observed:

I find the medical evidence, taken as a whole, establishes that although Claimant may have minimal, simple pneumoconiosis, it caused little, if any, respiratory impair-

ment.... Furthermore, even if pneumoconiosis might have played a minimal role in Claimant's *non*-disabling respiratory condition, it is wholly unrelated to Claimant's totally disabling condition, which was caused by the pneumonectomy necessitated by Claimant's cigarette-induced lung cancer. These conclusions are not only supported by the better reasoned medical opinions, but are buttressed by the precipitous drop recorded on the pulmonary function studies, Claimant's work history, as well as Claimant's testimony.

(J.A. 51.) The ALJ, therefore, concluded that pneumoconiosis was not a contributing factor in Ballard's total disability and denied his request for benefits.

Ballard appealed to the BRB, which reversed the ALJ's decision on September 28, 1994, and awarded benefits to Ballard. Relying upon our decision in *Grigg v. Director, OWCP,* the BRB concluded that the ALJ erred in lending any credence to the opinions of physicians who failed to diagnose pneumoconiosis. *See Grigg v. Director, OWCP,* 28 F.3d 416, 419–20 (4th Cir.1994) (observing that interim presumption that pneumoconiosis caused disability cannot be rebutted by medical report finding "no respiratory or pulmonary impairment" if physician erroneously assumed miner had no pneumoconiosis). Discounting the credibility of the physicians' opinions relied upon by the ALJ, the BRB focused on the remaining medical opinions in holding that Ballard's pneumoconiosis was a contributing cause of his total disability. *See Hobbs v. Clinchfield Coal Co.,* 917 F.2d 790 (4th Cir.1990) (*Hobbs I*); *Robinson v. Pickands Mather & Co.,* 914 F.2d 35 (4th Cir. 1990) (holding claimant must show by preponderance of evidence that pneumoconiosis was contributing cause of totally disabling respiratory impairment). The BRB therefore reversed the ALJ's decision and ordered entry of an award of benefits.

---

**2.** Pneumonectomy refers to the excision of lung tissue, especially of an entire lung. Dorland's Illustrated Medical Dictionary 1316 (28th ed.1994). Here, Ballard's left lung was removed in its entirety.

**3.** Although Ballard had worked for other coal mine operators, Dehue was Ballard's most recent coal mine employer of not less than one year. Therefore it is the responsible operator for purposes of the Act.

Dehue asserts that the ALJ's determination that pneumoconiosis was not a contributing cause of Ballard's disability was supported by substantial evidence in the record and was in accordance with law. Dehue therefore contends that the BRB erred in awarding Ballard black lung benefits. We agree.

## II.

■ The BRB reviews the ALJ's findings of fact to determine if they are supported by substantial evidence in the record. *Doss v. Director, OWCP,* 53 F.3d 654, 658 (4th Cir.1995). We review the BRB's decision for errors of law and to ensure the BRB's decision adhered to its statutory standard of review. *Id.* To that end, we undertake an independent review of the record, as in the place of the BRB, to determine whether the ALJ's factual findings were based upon substantial evidence in the record. *Toler v. Eastern Associated Coal Co.,* 43 F.3d 109, 114 (4th Cir.1995). We review the BRB's legal conclusions de novo, considering first the BRB's reading of our precedent in *Grigg. Scott v. Mason Coal Co.,* 60 F.3d 1138, 1140 (4th Cir.1995).

## A.

■ Ballard urges us to affirm the BRB's reasoning that our decision in *Grigg* compelled it to discount the probative value of the opinions of those physicians who did not diagnose pneumoconiosis in Ballard. The BRB, however, construed our decision in *Grigg* without the benefit of our most recent decision in *Hobbs v. Clinchfield Coal Co.,* 45 F.3d 819 (4th Cir.1995) (*Hobbs II* ). Evaluating Ballard's claim in the light of *Hobbs II,* we must reject his arguments because the physicians' opinions regarding the cause of Ballard's undisputed pulmonary impairment were probative evidence warranting due consideration by the ALJ.

Unlike Hobbs or Ballard, Grigg enjoyed an interim presumption under Part 727 of the regulations that he was "totally disabled due to pneumoconiosis." *Grigg,* 28 F.3d at 418 (noting invocation of presumption under 20 C.F.R. § 727.203(a)(1) based on x-ray evidence). To rebut the presumption, medical

reports were submitted stating that Grigg had "no respiratory or pulmonary impairment." In *Grigg,* we observed that when a physician premises such an opinion on the assumption that the miner has no pneumoconiosis, it is "not worthy of much, if any, weight." *Id.* at 419. In that instance, the physician's opinion simply contradicts the established presumption that the miner is disabled without offering rebuttal evidence regarding the *cause* of the miner's disability. *See also Warth v. Southern Ohio Coal Co.,* 60 F.3d 173, 175 (4th Cir.1995) (vacating order denying benefits where ALJ improperly credited physicians' opinions of no pneumoconiosis based on erroneous assumptions).

■ In *Hobbs II,* we confronted a slightly different context than that in *Grigg.* Whereas Grigg enjoyed a presumption, Hobbs bore the burden of establishing that pneumoconiosis caused his total disability. 20 C.F.R. § 718.204. We held in *Hobbs II* that once an ALJ has found that a miner suffers from some form of pneumoconiosis, a physician's opinion premised on an understanding that the miner does not suffer from *coal workers'* pneumoconiosis may hold probative value. 45 F.3d at 821. To begin, the physician's finding that the miner does not have coal workers' pneumoconiosis is not necessarily inconsistent with the ALJ's decision that the miner suffers from pneumoconiosis as it is defined in 20 C.F.R. § 718.201. Both conclusions may be accurate because "the legal definition of pneumoconiosis contained in § 718.201 is significantly broader than the medical definition of coal workers' pneumoconiosis." *Id.* Moreover, a medical opinion that acknowledges the miner's respiratory or pulmonary impairment, but nevertheless concludes that an ailment other than pneumoconiosis caused the miner's total disability, is relevant because it directly rebuts the miner's evidence that pneumoconiosis contributed to his disability. *See id.* (noting physicians acknowledged that miner suffered respiratory impairment attributable to coal dust, but concluded that skeletal problems, obesity, and arthritis caused miner's total disability); *cf. Grigg,* 28 F.3d at 419 (medical reports refuting existence of impairment hold little probative value on issue of causation).

Here the physicians' opinions that Ballard's pneumonectomy, necessitated by smoking-induced lung cancer, caused his total disability were highly relevant to the question of whether pneumoconiosis was a contributing cause of Ballard's total disability. None of the physicians' opinions refuted the ALJ's finding that Ballard suffered from a disabling respiratory condition following his pneumonectomy. Rather, Drs. Zaldivar, Fino, Hansbarger, Caffrey, and Crisalli simply concluded that Ballard's coal mine employment was not causally related to his disability. Drs. Sampath and Chang merely reported on the characteristics of Ballard's carcinoma, without offering an opinion as to causation.[4] Consistent with both *Grigg* and *Hobbs II*, these opinions are probative and warranted the close attention the ALJ accorded to them.

Dr. Zaldivar, a board-certified pulmonary specialist who examined Ballard and administered pulmonary function tests before the pneumonectomy, stated that Ballard was not disabled prior to the surgery, an opinion completely in accord with the ALJ, who found "minimal, if any, respiratory or pulmonary impairment" prior to the surgery. (J.A. 44.) Moreover, Dr. Zaldivar did not evaluate Ballard for pneumoconiosis and thus drew no conclusions contrary to the ALJ's further finding that, after the surgery, Ballard suffered from a totally disabling respiratory condition. Because Dr. Zaldivar's express assumptions were consistent with the ALJ's findings, the ALJ properly credited Dr. Zaldivar's opinion that Ballard's lung cancer, caused by smoking, was wholly unrelated to coal mine employment.

In their reports, Drs. Fino, Hansbarger, Caffrey, and Crisalli recognized that Ballard had respiratory or pulmonary impairment, concluded that *coal workers'* pneumoconiosis did not cause it, and determined that the pneumonectomy necessitated by smoking-induced lung cancer was the cause of Ballard's total disability. Their opinions are not inconsistent with the ALJ's dual findings that Ballard is totally disabled and has simple pneumoconiosis. Dr. Fino, board-certified in internal medicine with a subspecialty in pulmonary disease, acknowledged that Ballard developed a pulmonary disability due to his pneumonectomy, but concluded that coal workers' pneumoconiosis played no role in the cancer that necessitated the pneumonectomy. Similarly, Dr. Hansbarger, a board-certified pathologist who reviewed all of the materials in Ballard's file, found no evidence of coal workers' pneumoconiosis and attributed Ballard's disability entirely to the pneumonectomy necessitated by lung cancer. Dr. Hansbarger found that "[a]ny respiratory difficulty, or pulmonary impairment in [Ballard] cannot be ascribed to ... his coal mine employment." (J.A. 194.) Likewise, Dr. Caffrey, a board-certified pathologist, identified mild chronic bronchitis, centrilobular emphysema, and carcinoma, but associated them with cigarette smoking rather than pneumoconiosis. Finally, Dr. Crisalli, a board-certified internist who examined Ballard and reviewed his history, also testified that Ballard's postoperative pulmonary impairment was related to his smoking rather than coal dust exposure.[5]

---

4. The record discloses no indication that either Dr. Sampath or Dr. Chang premised an opinion on the absence of pneumoconiosis. Furthermore, their observations were consistent with the ALJ's findings. Dr. Sampath performed Ballard's pneumonectomy and reported that Ballard's preoperative physical examination, including arterial blood gases and pulmonary function test, was normal. In Ballard's discharge report, Dr. Sampath simply noted the patient's carcinoma in the left lung without surmising the cause of Ballard's condition. In the same vein, Dr. Chang, the pathologist who biopsied Ballard's lung tissue following the pneumonectomy, observed "large mucoepidermal carcinoma" as well as "moderated depositions of the anthracotic pigments" in the lung parenchyma (J.A. 192), without suggesting a cause or implying that Ballard was not impaired or did not suffer from pneumoconiosis. Therefore, the ALJ appropriately relied on the evidence of causation gleaned from their medical reports.

5. Dr. Crisalli stated in his report:

[Ballard] does have chronic bronchitis which is secondary to his smoking history. Based on the pre-operative pulmonary function studies, Mr. Ballard retains the pulmonary functional capacity to perform his previous job in the coal mines. Post left pneumonectomy, Mr. Ballard has a moderate pulmonary function impairment.

Lastly, Mr. Ballard has significant impairment because of his left pneumonectomy necessitated by his cancer of the lung. The lung

Thus, the opinions of Drs. Fino, Hansbarger, Caffrey, and Crisalli were not inconsistent with the ALJ's finding that Ballard suffered from a "totally disabling respiratory condition." (J.A. 44.) Whereas the physicians in *Grigg* denied the miner's respiratory impairment, Drs. Fino, Hansbarger, Caffrey, and Crisalli acknowledged Ballard's impairment but attributed it to his pneumonectomy rather than pneumoconiosis. *Cf. Hobbs II*, 45 F.3d at 821 (noting that although physicians found that miner "suffers from respiratory problems arising out of coal mine employment, they both concluded that his total disability was caused by obesity and arthritis, but not by pneumoconiosis").

Moreover, the four physicians' diagnoses that Ballard did not suffer from coal workers' pneumoconiosis did not contradict the ALJ's conclusion that Ballard had simple pneumoconiosis within the meaning of 20 C.F.R. § 718.201.[6] We emphasized in *Hobbs II* that "a medical diagnosis finding no coal workers' pneumoconiosis is not equivalent to a legal finding of no pneumoconiosis" because the legal definition is significantly broader than the medical definition. 45 F.3d at 821. Drs. Fino, Hansbarger, Caffrey, and Crisalli simply stated that they found no evidence of coal workers' pneumoconiosis, one of many ailments that would satisfy the legal definition of pneumoconiosis. In fact, Drs. Hansbarger and Caffrey expressly observed that Ballard exhibited symptoms pertaining to anthracosis, another of several ailments subsumed under the legal definition of pneumoconiosis. Dr. Hansbarger diagnosed anthracosilicosis of bronchial lymph nodes. Similarly, Dr. Caffrey discerned "black pigment which is morphologically consistent with coal dust," "a

mild amount of anthracotic pigment," and a "[m]oderate amount of anthracotic pigment identified within lung tissue and hilar lymph node tissue." (J.A. 202.)

Because the physicians here did not premise their opinions on an "erroneous finding" contrary to the ALJ's conclusion, as in *Grigg*, 28 F.3d at 419, the ALJ correctly credited their unanimous opinion that Ballard's disability was due to the pneumonectomy rather than pneumoconiosis. Accordingly, we hold that the BRB erred as a matter of law in discounting the physicians' opinions.

### B.

▉ Having determined that the ALJ did not err in according weight to the opinions of Drs. Zaldivar, Fino, Sampath, Chang, Hansbarger, Caffrey, and Crisalli, we now review the ALJ's finding that pneumoconiosis was not a contributing cause of Ballard's total disability. In so doing, we "adhere carefully to the principle that we must affirm the ALJ's factual findings and weighing of the medical evidence where these conclusions of the ALJ are supported by substantial evidence." *Hobbs II*, 45 F.3d at 820. Finding that the physicians' opinions provided substantial evidence that the pneumonectomy, rather than pneumoconiosis, caused Ballard's total disability, we affirm the ALJ's decision to deny benefits.[7]

▉ To receive black lung benefits, a claimant must prove by a preponderance of the evidence that he is "totally disabled due to pneumoconiosis." 30 U.S.C. § 901(a); 20 C.F.R. § 718.204(a). Specifically, the claimant must show "that his pneumoconiosis was at least a contributing cause of his totally

---

cancer was not in any way contributed to or caused by his coal dust exposure. (J.A. 219.)

6. Section 718.201 provides that
   [f]or the purpose of the Act, pneumoconiosis means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

7. Section 921(c)(1) of the Act and its interpretive regulations, 20 C.F.R. § 718.203(b), allow a petitioner a presumption that his pneumoconiosis arose out of coal mine employment if the claimant was employed for ten or more years in one or more coal mines. 30 U.S.C. § 921(c)(1). It is undisputed that Ballard was employed for ten years or more in one or more coal mines; therefore he enjoyed the presumption that his pneumoconiosis arose out of coal mine employment. 20 C.F.R. § 718.203(b).

disabling respiratory impairment." *Robinson*, 914 F.2d at 38; *Hobbs I*, 917 F.2d at 791–92 (same). Accordingly, we ask whether

> the claimant's coal mining [was] a *necessary condition* of his disability. If the claimant would have been disabled to the same degree and by the same time in his life if he had never been a miner, then benefits should not be awarded.

*Robinson*, 914 F.2d at 38 (emphasis added) (citing *Shelton v. Director, OWCP*, 899 F.2d 690, 693 (7th Cir.1990) ("A miner is not entitled to benefits if by reason of his heavy smoking or some other activity or condition of his that is not itself mining, he would have become totally disabled ....")); [8] *see Freeman United Coal Mining Co. v. Foster*, 30 F.3d 834, 838–39 (7th Cir.1994) (rejecting use of a disability unrelated to extant simple pneumoconiosis to support an award of black lung benefits), *cert. denied*, ── U.S. ──, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995).

Thus, if the record before the ALJ contains substantial evidence to support the conclusion that Ballard's cigarette smoking and resulting lung cancer would have disabled him to the same degree by the same time in his life had he never been a miner, he is not entitled to black lung benefits. Based upon our review of the record, the ALJ's careful consideration of the pulmonary function and blood gas tests, Ballard's work history and testimony, and the professional opinions of ten physicians, we conclude that substantial evidence in the record supports the ALJ's determination that Ballard failed to establish that pneumoconiosis was a contributing factor in his total disability.

We look first to the pulmonary function studies administered prior to the pneumonectomy and note that they reflect minimal, if any, respiratory impairment, as the ALJ so found. Not surprisingly, following the left pneumonectomy performed by Dr. Sampath on June 8, 1990, Ballard's tests revealed a precipitous drop in pulmonary function. This data supports the ALJ's conclusion that the disability demonstrated by Ballard's reduced pulmonary function was due to the pneumonectomy and not to his simple pneumoconiosis.

Ballard's own testimony further supports the ALJ's conclusion that he had suffered no impairment prior to the pneumonectomy. Ballard testified that prior to his pneumonectomy he never missed a day of work because of breathing problems. However, he testified that he did miss work because of breathing problems after the pneumonectomy.

The ALJ further recognized the extensive hospital reports and medical notes regarding Ballard's deteriorated condition post-surgery. He reviewed the written reports and depositions of Drs. Ranavaya, Zaldivar, Cinco, Ahmed, Hansbarger, Caffrey, Chang, Sampath, Crisalli, and Fino to detect any evidence of a causal connection between pneumoconiosis and Ballard's total disability. Three of these physicians, Drs. Ranavaya, Cinco, and Ahmed, diagnosed pneumoconiosis. Dr. Ranavaya, who performed pulmonary function studies on Ballard shortly after his surgery and on July 17, 1992, following Ballard's application for black lung benefits, attributed Ballard's impairment primarily to the pneumonectomy, but suggested perhaps that pneumoconiosis had affected Ballard's remaining lung.[9] Dr. Cinco, a consulting pathologist, diagnosed coal workers' pneumoconiosis, but articulated no causal connection between pneumoconiosis and Ballard's postoperative total disability.[10] Finally, Dr.

---

**8.** By adopting the "necessary condition" analysis of the Seventh Circuit in *Robinson*, we addressed those claims, such as the one before us today, in which pneumoconiosis has played only a de minimis part. *Robinson*, 914 F.2d at 38 n.5.

**9.** The first time Dr. Ranavaya examined Ballard was more than two months after the removal of his left lung. Although he noted the presence of pneumoconiosis, he specified that "[o]bviously, the largest part of pulmonary impairment is due to the pneumonectomy that was performed for the lung cancer." Nevertheless he observed that

"the remaining lung is less than normal in that the FEV1/FVC ratio is 67%, which reflects a mild pulmonary impairment." (J.A. 433.) Dr. Ranavaya concluded, "[i]t is therefore medically reasonable to conclude that Mr. Ballard has an occupational pneumoconiosis most likely due to his occupational exposure to dust in the coal mining and that he has pulmonary insufficiency as described." (J.A. 433.)

**10.** In his report, Dr. Cinco "found evidence of pulmonary anthracosis with macular lesions, sufficient to warrant a diagnosis of coal workers'

Ahmed, another consulting pathologist, who discerned evidence of simple pneumoconiosis in two of the fifteen slide samples he reviewed, was critical of the "grossly insufficient" amount of lung tissue sampled for the purpose of determining the presence or absence of the disease. (J.A. 437.) Relying on the same samples, he nevertheless stated that Ballard "suffered significant pulmonary impairment that was certainly aggravated by coal mine dust exposure." (J.A. 437.)

Five of the remaining physicians expressly concluded that Ballard's disability was caused by the pneumonectomy. In particular, Dr. Zaldivar, one of Ballard's initial examining physicians who also performed pulmonary function studies, stated that Ballard was not disabled prior to the surgery and that the lung cancer, caused by smoking, was wholly unrelated to coal mine employment. Similarly, Dr. Hansbarger, following his review of all the materials in Ballard's file, concluded that Ballard's pulmonary impairment was due to the carcinoma that necessitated the pneumonectomy. Dr. Caffrey's opinion was also unequivocal:

> It is my opinion that the patient does not show the necessary findings to make a diagnosis of coal workers' pneumoconiosis or any other occupational pneumoconiosis. The findings from this left pneumonectomy specimen, in my opinion, show a large mucoepidermoid carcinoma which has definitely no cause and [effect] relationship with coal mine work. [Ballard's] centrilobular emphysema and mild chronic bronchitis are due to his long history of smoking cigarettes, in my opinion.

(J.A. 203.) In like manner, Dr. Crisalli concluded that "Ballard has significant impairment because of his left pneumonectomy necessitated by his cancer of the lung. The lung cancer was not in any way contributed to or caused by his coal dust exposure." (J.A. 219.) Finally, Dr. Fino similarly concluded that pneumoconiosis did not cause Ballard's total disability:

> Prior to this man's lung surgery he had no pulmonary disability.

... Subsequent to his lung surgery he developed a pulmonary disability because the lung was removed. The lung was removed due to lung cancer, and the lung cancer was from cigarette smoking. Simple coal workers' pneumoconiosis or coal mine dust inhalation played no role in his cancer and subsequent removal of the left lung.

> ... *It is my opinion that this man would be as disabled as I find him now had he never stepped foot in the coal mines.*

(J.A. 108.) (emphasis added).

The clearly articulated opinions of both examining and consulting physicians support the ALJ's conclusion that "pneumoconiosis ... is wholly unrelated to [Ballard's] totally disabling condition, which was caused by the pneumonectomy necessitated by [Ballard's] cigarette-induced lung cancer." (J.A. 51.) The otherwise inexplicable sharp drop in Ballard's pulmonary function results and non-qualifying blood gas studies, as well as Ballard's work history and testimony, also bolster the ALJ's conclusion. We therefore conclude that the ALJ's decision to deny Ballard black lung benefits is supported by substantial evidence in the record and is in accordance with the law.

### III.

Based upon our review of the record, we conclude that the ALJ did not err in according weight to the opinions of Drs. Zaldivar, Fino, Sampath, Chang, Hansbarger, Caffrey, and Crisalli and that the ALJ's decision finding that pneumoconiosis was not a contributing cause of Ballard's disability is supported by substantial evidence. We therefore reverse the decision of the BRB and remand for entry of an order consistent with this opinion.

*REVERSED AND REMANDED.*

BUTZNER, Senior Circuit Judge, dissenting:

At the time of the administrative hearing the evidence firmly established that Lay-

---

pneumoconiosis of the dust reticulation type." (J.A. 423.) He made no connection, however, between his diagnosis and any disability suffered

by Ballard. Moreover, Dr. Cinco concluded that "the tumor in this case was not related to the coal workers' pneumoconiosis." (J.A. 423.)

mond Ballard was totally disabled because of a respiratory or pulmonary impairment, that he had pneumoconiosis arising from his coal mining employment, and that his exposure to coal dust did not cause his cancer. The only remaining issue is whether his pneumoconiosis contributed to his disability.

To establish that Ballard's pneumoconiosis did not contribute to his disability, the ALJ relied heavily on the fact that before Ballard had his left lung removed he was able to work in the mines. Several of the doctors based their opinions about causation on the same reasoning.

Both the Board, which reversed the ALJ, and the Director, who supports Ballard, point out that the ALJ's reasoning is contrary to law. The relevant inquiry for determining whether a coal miner is disabled is his condition on the date of his hearing before the ALJ. *Cooley v. Island Creek Coal Co.*, 845 F.2d 622, 624 (6th Cir.1988); *Coffey v. Director, OWCP*, 5 BLR 1–404, 1–407 (BRB 1982). The statute and the regulations are silent regarding the relevant time for assessing a miner's disability, and we owe no deference to the Board's views on this subject. *See Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n.18, 101 S.Ct. 509, 515 n.18, 66 L.Ed.2d 446 (1980). Nevertheless, we are not left without guidance. The Director's reasonable interpretation of the statute and regulations is entitled to substantial judicial deference. *See Pauley v. BethEnergy Mines*, 501 U.S. 680, 696–97, 111 S.Ct. 2524, 2533–34, 115 L.Ed.2d 604 (1991); *See v. Washington Met. Area Transit Authority*, 36 F.3d 375, 383 (4th Cir.1994).

Apparently convinced by *Cooley*, 845 F.2d at 624, the Director has taken the position that the relevant time for assessment of disability is the date of the hearing. I believe we should accept this view. The fact that Ballard could work in the mines before his operation, but not afterwards, does not preclude benefits. Whether his pneumoconiosis contributed to his disability must be assessed at the time of the hearing.

The ALJ relied in part on the opinions of Drs. Zaldivar, Chang, and Sampath. The doctors offered little, if any, information on the sole issue in this case. They all conclud-

ed that since the claimant's cancer was caused by smoking, it did not arise from coal mine employment. But that is not an issue. Ballard does not claim that his cancer arose from his coal mining employment.

Other sources of the ALJ's denial of benefits are the opinions of Drs. Fino and Crisalli. Neither of these doctors, however, found that Ballard had pneumoconiosis. Their failure to diagnose pneumoconiosis is contrary to both the substantial evidence that he has pneumoconiosis and the explicit finding of the ALJ, which was confirmed by the Board. Their opinions, therefore, have little or no value on the critical issue in this case—whether pneumoconiosis contributed to Ballard's disability. In words quoted from the Director's brief supporting Ballard, "it seems an inescapable conclusion that such an opinion can have no probative value, since a doctor who begins from the erroneous assumption that a miner does not have pneumoconiosis must necessarily conclude that pneumoconiosis was not a cause of disability."

Caution innate to the judiciary counsels us never to say "no probative value," but it is unlikely that such opinions can rise to the dignity of substantial evidence. In this circuit we have phrased this sound evidentiary rule by holding that "such opinions are not worthy of much, if any, weight." *Grigg v. Director, OWCP*, 28 F.3d 416, 419–20 (4th Cir.1994); *accord Toler v. E. Associated Coal Co.*, 43 F.3d 109, 115–16 (4th Cir.1995). Though expressed in different ways in the application of different black lung regulations, this principle apparently has universal support in those circuits that have considered it. *See, e.g., Skukan v. Consolidation Coal Co.*, 993 F.2d 1228, 1233 (6th Cir.1993), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 2732, 129 L.Ed.2d 854 (1994); *Peabody Coal Co. v. Shonk*, 906 F.2d 264, 271 (7th Cir. 1990); *Garcia v. Director, OWCP*, 869 F.2d 1413, 1417 (10th Cir.1989). In fairness to the ALJ, it should be noted that he did not have *Grigg* to guide him on the issue of causation, because we decided *Grigg* after the ALJ wrote his opinion.

I cannot subscribe to the notion that *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819 (4th

Cir.1995), modifies or in any other way encroaches on the logical, common sense, evidentiary rule of *Grigg. Hobbs II* can best be understood by taking into account that the ALJ and the Board decided it before our opinion in *Grigg.*

In *Hobbs II,* two of the doctors stated that Hobbs did not have "coal workers' pneumoconiosis," although he did have bronchitis and a chronic productive cough resulting from exposure to coal dust. They concluded that his respiratory impairment did not contribute to his total disability which was caused by obesity and arthritis. 45 F.3d at 820. The ALJ found that Hobbs did have pneumoconiosis, but he did not find that he had a total respiratory disability. Nevertheless, the ALJ credited the opinions of the doctors that pneumoconiosis did not contribute to Hobbs' disability and denied benefits. The Board affirmed. We decided *Grigg* pending Hobbs' petition for review of the Board's adverse decision.

In his petition for review, Hobbs, relying on *Grigg,* asserted that the Board erred in crediting the doctors' opinions on causation. The court rejected Hobbs' argument because the doctors' attribution of Hobbs' respiratory impairment to coal dust satisfied the legal definition of pneumoconiosis. Citing *Grigg,* the court held that the doctors were qualified to express an opinion on causation. However, far from detracting from *Grigg*'s authority, the *Hobbs II* court recognized the validity of the evidentiary principle that undergirds *Grigg.*

There is another aspect of *Hobbs II* that distinguishes it from the Board's decision that we are now reviewing. In *Hobbs II,* neither the ALJ nor the Board found that Hobbs had a totally disabling respiratory impairment. The Board wrote: "[The] Administrative Law Judge ... determined that [the evidence] was insufficient to establish that claimant suffered from a totally disabling respiratory impairment." *Hobbs v. Clinchfield Coal Co.,* BRB No. 92–1161 BLA at 2 (Sept. 1, 1993) (unpublished). It was, therefore, impossible to say that his pneumoconiosis contributed to his total disability. *See Jewell Smokeless Coal Corp. v. Street,* 42 F.3d 241, 243–45 (4th Cir.1994). This is in sharp contrast to the situation we are presently reviewing, for it is uncontested that Ballard has a totally disabling respiratory impairment.

The Board stated that the doctors whom the ALJ credited failed to diagnose Ballard's pneumoconiosis although the ALJ found its existence established. These opinions, therefore, were of little probative value on the issue of causation. *See Grigg,* 28 F.3d at 419–20.

The Board also pointed out that Dr. Ranavaya diagnosed pneumoconiosis in Ballard's remaining lung. The doctor found that this lung is less than normal, reflecting a mild pulmonary impairment of approximately 20 percent disability, which he concluded was due to exposure to coal dust. A pathologist, Dr. Ahmed, concluded that Ballard's significant pulmonary impairment was aggravated by coal dust exposure and that pneumoconiosis would prevent Ballard from performing his usual work in the mines. The Board determined that Ballard's total respiratory disability is due in part to pneumoconiosis. In this respect, the Board relied on *Robinson v. Pickands Mather & Co.,* 914 F.2d 35, 38 (4th Cir.1990), in which we held: "To be entitled to benefits, a claimant must prove by a preponderance of the evidence that his pneumoconiosis was at least a contributing cause of his totally disabling respiratory impairment."

*Hobbs II* has added a wrinkle to our consideration of causation. It held that a doctor who diagnosed legal pneumoconiosis is qualified to give an opinion on whether the pneumoconiosis contributed to total disability even though the doctor detected no medical pneumoconiosis. Because Drs. Hansbarger and Caffrey diagnosed conditions that arguably fall within the definition of legal pneumoconiosis, they may be qualified to give an opinion on whether Ballard's legal pneumoconiosis contributed to his total respiratory disability.

Dr. Crisalli, one of the company's witnesses, insisted that Ballard's mild impairment to his remaining lung was caused by smoking-induced bronchitis, not pneumoconiosis. Nevertheless, he acknowledged that

the removal of Ballard's right lung was not the sole cause of his total respiratory or pulmonary disability. He explained that there were two causes of Ballard's impairment, chronic bronchitis and the effect of the lung surgery. He added that Ballard "cannot undertake the heavy manual labor in the mines because of his pulmonary function impairment which is related to his chronic bronchitis and his pneumonectomy for lung cancer." Even the company's own witness recognized that the impairment of Ballard's left lung—which he called chronic bronchitis and others called pneumoconiosis—contributed to Ballard's total pulmonary disability.

Unfortunately, the ALJ did not have the benefit of *Grigg* and *Hobbs* when he evaluated the evidence to determine the sole question in this case, causation. In my opinion these cases are essential to understanding the complexities that have encrusted this issue.

Dissenting, I would not reverse the Board and deny benefits. Instead, I would vacate the Board's opinion and remand the claim to the ALJ with instructions to re-evaluate the evidence at the time of the hearing in light of *Grigg* and *Hobbs II*.