WILLIAMS, Chief Judge,
dissenting:
The regulations governing applications for benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. §§ 901-945 (West 2007) (“the Black Lung Benefits Act” or “the Act”), set forth detailed requirements governing the development of evidence at each stage of the administrative process through which such claims are adjudicated. Among these provisions is 20 C.F.R. § 725.456(b)(1), which provides as follows:
Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances. Medical evidence in excess of the limitations contained in § 725.414 shall not be admitted into the hearing record in the absence of good cause.
20 C.F.R. § 725.456(b)(1) (2007). The majority arrives at its interpretation of § 725.456(b)(1) by taking the phrase “[d]ocumentary evidence pertaining to [] liability” out of context and concluding that, when viewed in isolation, the regulation’s reference to “[d]ocumentary evidence pertaining to [J liability” is “unqualified,” ante at 234, and therefore must encompass all evidence submitted for the purpose of proving or disproving an operator’s liability that is documentary in form. I disagree.
For the reasons that follow, I agree with Marfork Coal Co. (“Marfork”) that the language and structure of § 725.456(b) (as well as the “regulatory history” on which the majority relies) reveal that the regulation delineates two distinct categories of documentary evidence — “medical evidence” and “evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator,” which the Department of Labor (“DOL”) did not anticipate would overlap. Moreover, cross references between the regulations make clear that the category of evidence pertaining to liability in § 725.456(b) encompasses only that evidence which 20 C.F.R. §§ 725.408(b) and 725.414(b) (2007) authorize parties to submit to the district director. I would therefore conclude that, because the phrase “[djocumentary evidence pertaining to [J liability” in § 725.456(b) references a narrow and specific category of evidence identified elsewhere in the regulations, the Benefits Review Board (“BRB”) erred in construing the phrase as broadly encompassing any and all documentary evidence used to disprove liability.[1] Accordingly, I respectfully dissent.
*239 I.
We review the BRB’s decision for errors of law and to ensure that the BRB adhered to its statutory standard of review. Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir.1995). “To that end, we undertake an independent review of the record, as in the place of the BRB, to determine whether the ALJ’s factual findings were based upon substantial evidence in the record.” Id. We review the BRB’s legal conclusions de novo. Id.
Because the Director of the Office of Workers’ Compensation (“the Director”) administers the regulations implementing the Black Lung Benefits Act, we accord his interpretation of an ambiguous regulatory provision “substantial deference unless it is plainly erroneous or inconsistent with the regulation.” Mullins Coal Co. v. Director, O.W.C.P., 484 U.S. 135, 159, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987) (internal quotation marks omitted). In this case, however, the majority relies on the “plain language and history of the regulation,” ante at 230, in embracing the Director’s view, not deference to its proponent. In addition, the Director himself has asserted that because “the regulatory language is clear and unambiguous,” no deference is due. (J.A. at 355.) Although I read the regulations differently than the Director, I agree that their meaning is plain. Accordingly, I too would accord no deference to the Director’s interpretation.
A.
As with the interpretation of statutes, our interpretation of federal regulations begins with their language. See Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (“Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.”). Questions concerning the plainness or the ambiguity of the statutory language are resolved “by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Id. at 341, 117 S.Ct. 843; see also Ayes v. U.S. Dept. of Veterans Affairs, 473 F.3d 104, 108 (4th Cir.2006) (“Of course, in looking to the plain meaning, we must consider the context in which the statutory words are used because we do not construe statutory phrases in isolation; we read statutes as a whole.” (internal quotation marks omitted)).
The language and structure of § 725.456(b) make clear that § 725.456(b)(l)’s reference to “[d]ocumentary evidence pertaining to [] liability” does not encompass medical evidence. Section 725.456(b)(1) provides that:
Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances. Medical evidence in excess of the limitations con *240 tained in § 725.414 shall not be admitted into the hearing record in the absence of good cause.
20 C.F.R. § 725.456(b)(1). Thus, § 725.456(b)(1) sets forth separate requirements for “documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator” and “[m]edical evidence.” Id. Section 725.456(b)(2), in contrast, provides that
[s]ubject to the limitations in paragraph (b)(1) of this section, any other documentary material, including medical reports, which was not submitted to the district director, may be received in evidence subject to the objection of any party, if such evidence is sent to all other parties at least 20 days before a hearing is held in connection with the claim.
Id. § 725.456(b)(2) (emphasis added). In § 725.456(b)(2), the DOL did not leave it to the reader to assume that “any other documentary material” could include medical reports. Instead, that subsection explicitly states that the reference to documentary material included medical reports. Applying the rule of statutory construction expressio unius est exclusio alterius (“the expression of one thing implies the exclusion of another”), the omission of a reference to medical evidence in § 725.456(b)(1)’s pronouncement regarding “[d]ocumentary evidence pertaining to liability” is properly understood as an exclusion of that evidence. See Ayes, 473 F.3d at 110-11 (“The time-honored maxim ex-pressio unius est exclusio alterius ... applies with great force here.”); 2A Norman J. Singer, Sutherland on Statutory Construction § 47.23 (6th ed.2000). Thus, given the language of § 725.456(b)(2), it is clear that the phrase “[djocumentary evidence pertaining to [ ] liability” in § 725.456(b)(1) does not encompass medical evidence.
B.
Moreover, even absent the explicit language in § 725.456(b)(2), the interplay among the regulations governing the adjudication of claims for benefits under the Black Lung Benefits Act further demonstrates that the reference to “[documentary evidence pertaining to [] liability” in § 725.456(b)(1) is not an unqualified phrase encompassing all evidence having any bearing on an operator’s liability. As explained below, that phrase merely references specific evidence identified elsewhere in the regulatory scheme.
The DOL’s regulations detail the mechanism through which an operator’s liability and a claimant’s entitlement to benefits are established. With regard to liability, the district director first uses the information provided in an applicant’s claim form to identify one or more potentially liable operators and sends those operators a notice of claim. 20 C.F.R. § 725.407 (2007). An operator receiving such a notice has thirty days within which to file a response “indicating its intent to accept or contest its identification as a potentially liable operator.” 20 C.F.R. § 725.408(a)(1) (2007). If the operator contests its identification, it must, “on a form supplied by the district director, state the precise nature of its disagreement by admitting or denying each of [the five] assertions” listed in 20 C.F.R. § 725.408(a)(2). 20 C.F.R. § 725.408(a)(2). The five assertions in § 725.408(a)(2) relate only to the operator’s employment of the claimant and ability to make payments.[2] The operator “may *241 submit documentary evidence in support of its position” within 90 days of the date on which it received the notice of claim. 20 C.F.R. § 725.408(b)(1). An operator that does not submit documentary evidence relevant to the five assertions in § 725.408(a)(2) within the 90-day period is precluded from introducing the evidence at a later date. 20 C.F.R. § 725.408(b)(2) (“No documentary evidence relevant to the grounds set forth in [§ 725.408(a)(2) ] may be admitted in any further proceedings unless it is submitted within the time limits set forth in this section.”).
After receiving the responses and evidence submitted pursuant to § 725.408, the district director designates a “responsible operator” liable for the payment of benefits and issues a schedule for the submission of additional evidence. 20 C.F.R. § 725.410 (2007). The schedule must allow the parties “not less than sixty days within which to submit additional evidence, including evidence ... relevant to the liability of the designated responsible operator.” 20 C.F.R. § 725.410(b). This additional evidence must, however, “meet the requirements set forth in § 725.414 in order to be admitted into the record.” 20 C.F.R. § 725.410(b).
Section 725.414, in turn, contains separate subsections entitled “medical evidence” and “evidence pertaining to liability.” See 20 C.F.R. § 725.414(a), (b).[3] The subsection addressing evidence pertaining to liability, § 725.414(b), provides that “[e]xcept as provided by § 725.408(b)(2), the designated responsible operator may submit evidence to demonstrate that it is not the potentially liable operator that most recently employed the claimant.” 20 C.F.R. § 725.414(b)(1). Thus, the only “evidence pertaining to liability” that § 725.414 permits a designated responsible operator to submit to the district director is evidence that (1) demonstrates that it is not the potentially responsible operator that most recently employed the claimant, and (2) does not go to the five assertions in § 725.408(a)(2). See 20 C.F.R. §§ 725.408(b)(2), 725.414(b)(1). Section 725.414 does not authorize the designated responsible operator to submit any other type of evidence pertaining to liability.
Pursuant to § 725.414(d), parties must submit the “evidence pertaining to liability” detailed in § 725.414(b) within the time period allotted in the schedule set by the district director; it cannot be introduced into the record at a later stage of the proceedings. See 20 C.F.R. § 725.414(d). Section 725.414(d) does not apply to medical evidence submitted in accordance with § 725.414(a). In addition, § 725.414(d)’s limitation on the submission of evidence pertaining to liability is not absolute — it excepts evidence admissible under §§ 725.456 and 725.310(b). 20 C.F.R. § 725.414(d) (“Except to the extent permitted by § 725.456 and § 725.310(b), the limitations set forth in this section shall apply to all proceedings conducted with respect to a claim, and no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to a claim unless it is *242 submitted to the district director in accordance with this section.”).[4]
Accordingly, evidence pertaining to liability that is admissible under § 725.414(b) may be submitted after a case has been transferred from the district director to the Office of Administrative Law Judges (ALJs) only if it falls within an exception contained in § 725.456. One such exception is § 725.456(b)(1), the provision discussed in Part A, which allows the admission into the hearing record of “[documentary evidence pertaining to liability” that was not submitted to the district director in “extraordinary circumstances.” 20 C.F.R. § 725.456(b)(1) (stating that “[documentary evidence pertaining to the liability of a potentially liable operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances”).
Thus, contrary to the majority’s view, § 725.456(b)(1) does not represent an independent requirement governing a category of “evidence pertaining to [] liability” broader than or otherwise different from the “evidence pertaining to liability” described in §§ 725.408(b) and 725.414(b). It simply places a qualified limitation on the parties’ ability to introduce to the ALJ evidence that they could have submitted to the district director pursuant to §§ 725.408(b) and 725.414(b).
C.
Contrary to the majority’s assertion, the comments to the regulations governing the adjudication of claims for Black Lung benefits do not countenance an expansive interpretation of § 725.456(b)(1). To the contrary, an examination of these comments further demonstrates that the DOL intended to allow potentially liable operators to defer the development of medical evidence until after a case was referred to the Office of ALJs.
The majority correctly notes that when the DOL revised the regulations in 2000, it sought to streamline the processing of claims. Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed.Reg. 79920, 79990 (Dec. 20, 2000). To this end, the revised regulations prohibit remand to the district director for the designation of a new responsible operator in the event that the ALJ determines the district director erred in its original selection. Id. at 79986. This restriction reduces delay in the adjudication of claims but also “places the risk that the district director has not named the proper operator on the Black Lung Disability Trust Fund [ (the “Fund”) ].” Id.
The Director argues that the DOL proved willing to place this risk on the Fund because the DOL believed that the regulations governing evidence pertaining to liability would provide the district director with the information necessary to designate the correct responsible operator and avoid subjecting the Fund to unwarranted liability. The majority accepts this contention, and reads the Federal Register commentary as evincing the DOL’s belief that, in revising the regulations, it had provided for the submission of all evidence relevant to liability to the district director. That the DOL sought to provide the district director with all of the information necessary to correctly identify responsible operators, however, does not mean that *243 the regulations the DOL enacted in fact accomplished this goal.
In support of its view, the majority seizes on fragments of the commentary stating that operators must “submit evidence regarding their potential liability for the claim” and that the regulations require the “submission of any evidence relevant to the liability of another party during the district director's claims processing.” Id. at 79999. To be sure, the comments do indicate that “the evidentiary limitations of §§ 725.408 and 725.414 are designed to provide the district director with all of the documentary evidence relevant to the determination of the responsible operator liable for the payment of benefits.” Id. at 79976.[5] The DOL’s belief that it had identified all of the documentary evidence relevant to an operator’s liability and provided for its submission to the district director pursuant to §§ 725.408 and 725.414, however, has no bearing on whether § 725.456 properly can be construed as creating an independent requirement that operators submit medical evidence bearing on liability to the district director.[6]
Moreover, the commentary explicitly states that the revised regulations “permit parties to maintain their current practice of deferring the development of medical evidence until after a case had been referred to the Office of Administrative Law Judges.” Id. at 79984. The DOL addressed the anticipated costs of compliance with the revised regulations in some detail, explaining that “while potentially liable operators [would] be required to develop evidence relevant to their liability while claims [were] pending before district directors, they [would] no longer need to expend money on the development of medical evidence in those cases ... that do not proceed beyond the district director level.” Id. Accordingly, “in the small number of cases in which the Department [did] not name the miner’s most recent employer as the responsible operator,” the earlier employer might “incur additional costs in attempting to establish that a more recent employer should be held liable for the payment of benefits.” Id. The DOL believed, however, that “[i]n comparison to the costs of developing medical evidence ... the additional costs imposed by the regulations [would] not be significant.” Id. Thus, the comments reveal that the *244 DOL intended the revised regulations to allow operators to defer the development of medical evidence until the case reached the ALJ.
D.
In sum, the language and structure of 20 C.F.R. § 725.456(b) itself, the interplay among the regulations governing the development of evidence at each stage of the administrative process, and the Federal Register comments to the regulations make clear that § 725.456(b) differentiates between “medical evidence” and “evidence pertaining to liability.” These sources also reveal that whether a particular piece of documentary evidence constitutes medical evidence or evidence pertaining to liability depends on what the evidence is, not the purpose for which it is offered. Only evidence relevant to the five assertions in § 725.408(a)(2) and evidence demonstrating that an operator was not the potentially liable operator that most recently employed the claimant constitutes “evidence pertaining to liability” within the meaning of §§ 725.414(b) & (d) and 725.456(b)(1). The evidence that Marfork sought to introduce to the ALJ — interpretations of a 1992 x-ray demonstrating that Weis suffered from complicated pneumoconiosis prior to his employment with Marfork — was neither. Accordingly, the BRB erred in concluding that § 725.456(b)(1) precluded the introduction into the record of the 1992 x-ray interpretations.[7]
II.
In sum, I believe that the BRB erred in concluding that medical evidence may constitute “evidence pertaining to [ ] liability” within the meaning of § 725.456(b)(1). I would therefore reverse the BRB’s determination that the ALJ properly ignored the 1992 x-ray interpretations in adjudicating Marfork’s liability for Weis’s Black Lung benefits and remand for further proceedings. Accordingly, I respectfully dissent.

. The majority states that an operator may avoid liability by, among other things, “proving] that it did not cause, contribute to, or aggravate the miner's pneumoconiosis” or *239 "proving] that the miner was already totally disabled by pneumoconiosis before he was hired.” Ante at -. These alternatives, however, are one and the same. Demonstrating that a miner was totally disabled from pneumoconiosis prior to his employment with the operator is simply one way of proving that the operator did not cause or contribute to the miner's total disability. See, e.g., Truitt v. N. Am. Coal Co., 2 Black Lung Rep. 1-199, 1-204/05 (1979) (reasoning that because a miner with complicated pneumoconiosis is irrebutably presumed to be totally disabled due to pneumoconiosis, coal mine employment subsequent to the development of the complicated pneumoconiosis could not contribute to the disability).

. Specifically, the five assertions that the operator must admit or deny are:
(i) That the named operator was an operator for any period after June 30, 1973;
*241 (ii) That the operator employed the miner as a miner for a cumulative period of not less than one year;
(iii) That the miner was exposed to coal mine dust while working for the operator;
(iv) That the miner's employment with the operator included at least one working day after December 31, 1969; and
(v) That the operator is capable of assuming liability for the payment of benefits.
20 C.F.R. § 725.408(a)(2) (2007).

. Section 725.414 distinguishes between documentary evidence and testimony. Section 725.414(a) & (b) apply only to documentary evidence. Section 725.414(c) addresses testimony. See 20 C.F.R. § 725.414 (2007).

. Section 725.310(b) addresses the submission of additional medical evidence in modification proceedings (proceedings in which the district director may reconsider the terms of an award or the denial of benefits), and has no applicability to the introduction of liability evidence while a claim is before the ALJ. See 20 C.F.R. § 725.310(b) (2007).

. The comments, like the regulations, recognize two types of evidence relevant to liability “(1) [d]ocumentary evidence relevant to an operator’s identification as a potentially liable operator, governed by § 725.408; and (2) documentary evidence relevant to the identity of the responsible operator, governed by § 725.414 and 725.456(b)(1).” Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920, 79976 (Dec. 20, 2000). The comments also describe the two types of evidence. With regard to the documentary evidence relevant to the identity of the responsible operator, they state that, ”[u]nder § 725.414, an operator may submit documentary evidence to prove that a company that more recently employed the miner should be the responsible operator.” Id. They do not, however, reference any other evidence as potentially relevant to liability.

. The DOL may have overlooked this possibility because cases in which medical evidence is relevant to the identification of the responsible operator are rare. Medical evidence is irrelevant in cases involving simple pneumoconiosis, and these cases account for the majority of claims under the Act. And, as the Director has acknowledged, complicated pneumoconiosis cases in which liability is disputed are rare. Rarer still are cases in which a miner is presumed totally disabled from complicated pneumoconiosis but works for several more years before filing for benefits. Moreover, even in these unusual circumstances, the claimant would ordinarily seek out evidence relevant to the onset date of his complicated pneumoconiosis in order to obtain the full amount of benefits available under the Act.

. I also wish to note that, even were I to agree with my colleagues’ interpretation of § 725.456(b), I would be inclined to find that submission of the 1992 x-ray before the Administrative Law Judge ("ALJ") was proper because § 725.456(b)(1) permits submission of documentary evidence to the ALJ in extraordinary circumstances. Given that the comments to the regulations indicate that the regulations "permit parties to maintain their current practice of deferring the development of medical evidence until after a case had been referred to the Office of Administrative Law Judges,” 65 Fed.Reg. at 79984, and promise that the regulations will not be a trap for the unwary litigant, see Fed.Reg. at 79986 (rejecting such criticism because “the nature of the evidence required ... and the time limits for submitting that evidence, are clearly set forth in the regulations, and will be communicated to potentially liable operators who are notified of a claim by the district director”), it seems unduly harsh to presume Marfork had notice that it needed to present the 1992 x-ray to the district director.
Moreover, in this case, permitting Marfork to introduce the 1992 x-ray would not have worked prejudice upon the Fund. The record instead reveals that Weis’s employer in 1992, Maben Energy Co., went bankrupt while self-insured and that its liability transferred to the Fund. See 20 C.F.R. § 725.495(a)(4)(2007). Thus, the Fund would have been liable in any event and, if anything, is now receiving a windfall in that a demonstrably innocent operator is left to provide Weis’s benefits.