Clarence HOBBS, Petitioner,

v.

CLINCHFIELD COAL COMPANY; Director, Office of Workers Compensation Programs, United States Department of Labor, Respondents.

No. 93–2314.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 27, 1994.

Decided Jan. 18, 1995.

---

**ARGUED:** Frederick Wayne Adkins, Cline, Adkins, Cline & Rogers, Norton, VA, for petitioner. Michael Francis Blair, Penn, Stuart, Eskridge & Jones, Abingdon, VA, for respondents.

Before WIDENER and MOTZ, Circuit Judges and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge MICHAEL wrote the opinion, in which Judge WIDENER and Judge MOTZ joined.

## OPINION

MICHAEL, District Judge:

Clarence Hobbs ("Hobbs") appeals from a decision of the Benefits Review Board ("BRB") affirming the decision of an Administrative Law Judge ("ALJ") denying him black lung benefits. The ALJ found that although Hobbs suffers from pneumoconiosis and is totally disabled, the pneumoconiosis is not a contributing cause of his total disability pursuant to 20 C.F.R. § 718.204(c)(4) (1994). We affirm.

### I.

Hobbs filed a claim for black lung benefits on September 23, 1982. He has worked in coal mining for thirty-six years and has never smoked. Initially, an ALJ denied Hobbs' claim, finding that his total disability is not due to pneumoconiosis. The BRB affirmed, but this court vacated the ALJ's decision because it was unclear whether he applied the correct standard of causation. *See Hobbs v. Clinchfield Coal Co.,* 917 F.2d 790, 791–92 (4th Cir.1990) (stating that pneumoconiosis need only be a contributing cause of a claimant's total disability rather than the exclusive cause) (citing *Robinson v. Pickands Mather & Co.,* 914 F.2d 35, 38 (4th Cir.1990)). As a result, we remanded for a determination of whether pneumoconiosis was a contributing cause of Hobbs' total disability.[1]

On remand, an ALJ again denied benefits to Hobbs. He accorded great weight to the opinions of Drs. Sargent, Kress, and Stewart, all of whom found that Hobbs' disability is caused by obesity and arthritis. In contrast, the ALJ attributed less weight to some doctors who found that pneumoconiosis is a cause of Hobbs' total disability. After reviewing all of the medical evidence, the ALJ found that pneumoconiosis is not a contributing cause of Hobbs' total disability. The BRB affirmed the decision of the ALJ, based largely upon his discretion to weigh the medical evidence.

In reviewing the decision below, we are required to adhere carefully to the principle that we must affirm the ALJ's factual findings and weighing of the medical evidence where these conclusions of the ALJ are supported by substantial evidence. *Thorn v. Itmann Coal Co.,* 3 F.3d 713, 718 (4th Cir. 1993). After reviewing the record, we conclude that substantial evidence supports the ALJ's decision that pneumoconiosis is not a contributing cause of Hobbs' total disability. The ALJ set forth reasons why he attributed greater weight to certain medical opinions, and he specifically addressed each medical opinion which disagreed with his ultimate conclusion.

### II.

The ALJ attributed great weight to the opinions of Drs. Sargent, Kress, and Stewart in concluding that pneumoconiosis is not a contributing cause of Hobbs' total disability pursuant to 20 C.F.R. § 718.204(c)(4).[2] Hobbs asserts that the ALJ erred in doing so

---

1. At this stage of the proceedings, it is established that Hobbs has pneumoconiosis and that he is totally disabled. *See Hobbs,* 917 F.2d at 791 n. 1.

2. The ALJ also relied heavily on the opinions of Drs. Garzon, Buddington, and Rosser. Hobbs does not challenge his reliance on these opinions.

because those doctors premised their conclusions upon faulty diagnoses of no pneumoconiosis. *See Grigg v. Director, Office of Workers' Compensation Programs,* 28 F.3d 416, 419 (4th Cir.1994) (stating that an opinion finding no respiratory or pulmonary impairment that is premised upon an erroneous finding of no pneumoconiosis is "not worthy of much, if any, weight"). Contrary to Hobbs' contention, however, these doctors did not premise their conclusions upon findings of no pneumoconiosis.[3] Drs. Sargent and Kress stated only that Hobbs does not suffer from "coal workers' pneumoconiosis" and they presumed that any respiratory impairment that was present in Hobbs was attributable to coal dust. For example, Dr. Sargent stated:

> It is my impression that this man has little or no evidence of interstitial lung disease secondary to coal workers' pneumoconiosis.... He does have a fairly impressive history for chronic productive cough and occasional wheezing. In a man who is a non-smoker and has never been a smoker therefore we must infer that this chronic productive cough is due to his exposure to coal dust.

In addition, Dr. Kress found that Hobbs suffers from chronic bronchitis attributable to coal dust exposure, but that his disability results from skeletal problems rather than pneumoconiosis. Although Drs. Sargent and Kress found that Hobbs suffers from respiratory problems arising out of coal mine employment, they both concluded that his total disability was caused by obesity and arthritis, but not by pneumoconiosis.

Hobbs' argument fails to distinguish the particular medical affliction "coal workers' pneumoconiosis" from the much broader legal definition of pneumoconiosis used to consider requests for black lung benefits.

> For the purpose of the Act, *pneumoconiosis* means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 718.201 (1994). Although "coal workers' pneumoconiosis" may be used synonymously with pneumoconiosis in medical circles, the two terms are distinct legally. First, § 718.201 includes coal workers' pneumoconiosis as only one of several possible ailments which could satisfy the legal definition of pneumoconiosis. Furthermore, the comparative breadth of the legal definition contained in § 718.201 is indicated by its inclusion of certain disorders which medically are different from pneumoconiosis. Clinically, pneumoconiosis may be described in simple terms as a chronic lung disease marked by an overgrowth of connective tissue caused by the inhalation of certain dusts. J.E. Schmidt, M.D., *Attorney's Dictionary of Medicine and Word Finder* P–239 (1993). In contrast, anthracosilicosis, for example, is a darkening and hardening of the lungs caused by the inhalation of certain dusts. *Id.* at A–289. Although all of the disorders explicitly mentioned in § 718.201 are medically similar, what is important is that a medical diagnosis finding no coal workers' pneumoconiosis is not equivalent to a legal finding of no pneumoconiosis. Clearly, the legal definition of pneumoconiosis contained in § 718.201 is significantly broader than the medical definition of coal workers' pneumoconiosis. *See Nance v. Benefits Review Bd.,* 861 F.2d 68, 71 (4th Cir.1988).

As a result, the medical conclusions of Drs. Sargent and Kress that Hobbs is not impaired by coal workers' pneumoconiosis do not necessarily conflict with the ALJ's legal conclusion that Hobbs suffers from pneumo-

---

3. Dr. Stewart's opinion seems to preclude any finding of respiratory impairment. Ignoring completely his opinion, *arguendo*, we find that the opinions of Drs. Sargent, Kress, Garzon, Buddington, and Rosser provide substantial evidence upon which the ALJ could base his conclusion that pneumoconiosis was not a contributing cause of Hobbs' total disability.

coniosis. In fact, the first ALJ, whose decision finding pneumoconiosis was affirmed by this court, *see Hobbs,* 917 F.2d at 791 n. 1, based this conclusion on medical evidence that Hobbs suffered from chronic bronchitis. He stated: "While opinion is divided as to whether [Hobbs] suffers from medical pneumoconiosis, (as opposed to the broader legal definition of pneumoconiosis) almost every physician who examined [Hobbs] indicated that he does suffer from a pulmonary impairment: chronic bronchitis." *Hobbs v. Clinchfield Coal Co.,* Dept. of Labor No. 84–BLA–6943 at 4 (Jan. 15, 1988). Given the willingness of Drs. Sargent and Kress to attribute Hobbs' respiratory problems to coal dust exposure, it cannot be said that their opinions stating that pneumoconiosis did not contribute to Hobbs' total disability are "not worthy of much, if any, weight." *See Grigg,* 28 F.3d at 419.

### III.

Hobbs next asserts that the ALJ incorrectly failed to attribute enough weight to certain medical opinions. Failure specifically to address all medical opinions which disagree with the ALJ's ultimate decision of whether pneumoconiosis is a contributing cause of a claimant's total disability could violate the requirement that all ALJ decisions include "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record...." 5 U.S.C. § 557(c)(3)(A).[4] Notwithstanding, in this case the ALJ properly stated reasons why he discounted the opinions of doctors who found total disability due to pneumoconiosis. He stated that the opinions of Drs. Tholpady and Lyle were conclusory and failed to account for the underlying test results, and that the "cursory" opinion of Dr. Gregoriou that Hobbs "should avoid further coal dust exposure" is insufficient to support a finding of total disability contributed to by pneumoconiosis. In addition, in contrast to other doctors' opinions that the

ALJ reviewed, none of these doctors possess any special expertise in pulmonary medicine.

The ALJ also considered unreliable the opinion of Dr. Modi because he admitted in deposition that he could not explain his diagnosis in light of the objective test results. Dr. Modi acknowledged that Hobbs' arterial blood gas tests were normal, and he stated that his diagnosis could not account for the discrepancy between Hobbs' MVV and FVC ratios in his pulmonary function tests.[5] Dr. Modi further conceded that he did not take this discrepancy into consideration in reaching his diagnosis, even though he originally stated that his diagnosis was based upon a totality of the circumstances. Lastly, although Dr. Modi diagnosed restrictive lung disease in Hobbs based only upon history and an x-ray, he admitted in his deposition that the amount of restriction could not be diagnosed accurately based upon only those considerations. Given these problems with Dr. Modi's methods of diagnosis, it was reasonable for the ALJ to discount Dr. Modi's conclusions.

### IV.

The ALJ's decision finding that pneumoconiosis was not a contributing cause of Hobbs' total disability is supported by substantial evidence. The medical opinions upon which he relied most strongly were not tainted by underlying conclusions of no pneumoconiosis pursuant to the legal definition contained in 20 C.F.R. § 718.201. Furthermore, the ALJ specifically addressed each medical opinion which found total disability due to pneumoconiosis, and he gave sound reasons for discounting them. As a result, we must affirm the BRB's decision affirming the ALJ's denial of black lung benefits.

*AFFIRMED.*

---

4. This standard applies in this case by virtue of 33 U.S.C. § 919(d), as incorporated by 30 U.S.C. § 932(a).

5. FVC, or forced vital capacity, measures the maximum volume of air that forcefully can be expelled from the lungs after inspiring maximally. MVV, or maximal voluntary ventilation, measures the maximal amount of air that a patient can breathe in and out deeply and rapidly, assuming that the effort could be sustained for one minute. Both the FVC and the MVV are compared to the $FEV_1$, the forced expiratory volume in one second, and an accurate MVV would be forty (40) times the $FEV_1$.