**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
<u>Petitioner,</u>

v.

No. 96-2520

DAVID L. GREGORY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
<u>Respondents.</u>

On Petition for Review of an Order
of the Benefits Review Board.
(95-1226)

Submitted: May 13, 1997

Decided: June 6, 1997

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

James M. Mesnard, SEYFARTH, SHAW, FAIRWEATHER & GER-
ALDSON, Washington, D.C., for Petitioner. J. Davitt McAteer, Act-
ing Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Janet R.
Dunlop, Luann B. Kressley, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C.; Robert J. Macbeth, Jr., RUTTER &
MONTAGNA, L.L.P., Norfolk, Virginia, for Respondents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Newport News Shipbuilding & Dry Dock Company ("Newport News") petitions for review of an order of the Department of Labor's Benefits Review Board ("BRB"). The BRB summarily affirmed[1] the decision of an administrative law judge ("ALJ"), who granted David L. Gregory's claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 to 950 (West 1986 & Supp. 1997), and denied Newport News' request for relief under § 908(f) for pre-existing disability.

Newport News states that we should remand the case because the ALJ failed to make findings of fact and to explain his reasons for discrediting evidence in the record contradictory to his findings, as required by the Administrative Procedure Act, 5 U.S.C. 557(c)(3)(A) (1994). We agree that a remand is necessary. Therefore, we vacate the decision of the BRB and order it to remand this matter to the ALJ with instructions.

Gregory filed a claim for permanent total disability benefits and permanent partial disability benefits. He claimed disability beginning March 4, 1992, due to a work-related back injury sustained on November 8, 1989. The ALJ determined that Gregory was permanently partially disabled, that he was precluded from lifting more than

_____

[1] The BRB never addressed the merits of the appeal. On September 12, 1996, the BRB sent the parties a notice stating that pursuant to the provisions of Public Law Number 104-134, enacted on April 26, 1996, all appeals to the BRB relating to claims under the Act were deemed to have been affirmed if the case had been pending before the BRB for one year by September 12, 1996. Because Gregory's appeal met these criteria, the BRB informed the parties that the ALJ's decision had been effectively affirmed by the BRB on September 12, 1996, for purposes of their rights to obtain review in this court.

2

twenty pounds, and that he was required to limit repetitive bending, lifting, stooping, ladder climbing, or working overhead. The ALJ found that such limitations prevented Gregory from performing his former employment as a painter/sandblaster. In so finding, the ALJ stated that he found "credible and convincing" the reports of Dr. Newby, Dr. Williamson, Dr. Porter and Dr. Blasdell. Finally, the ALJ summarily denied § 908(f) relief, finding that Newport News' evidence regarding pre-existing injury was "unconvincing."

The evidence in the record consists of numerous medical reports. Dr. John Bobbitt, a physician at the shipyard, examined claimant on November 8, 1989, and diagnosed an "acute L-S[lumbosacral] strain." Gregory was then treated by his family doctor, James Newby. On January 8, 1990, he was returned to work by Newby with a recommendation for three weeks of light duty consisting of no lifting over twenty pounds.

Gregory returned to work on January 8, but experienced recurrent pain and was sent home by the shipyard's medical clinic on January 9. Gregory returned on January 12 and was again sent home on January 16. The shipyard physician then referred Gregory to Dr. Sterling Williamson, an orthopaedic specialist. Based on an examination and the results of an MRI, Williamson diagnosed a "focal herniation" and referred Gregory to Dr. I. Stanley Porter, an orthopaedic surgeon.

Porter referred Gregory to a physical therapist, Patty Healy-Osborne, for a physical capacities evaluation. Healy-Osborne cleared Gregory for light duty work after finding him able to lift up to twenty pounds. She also suggested limiting Gregory's bending, stooping, crawling, twisting, ladder climbing, and overhead working. However, Healy-Osborne noted that Gregory was not giving sufficient effort in the program and that he consciously tried to limit his actual ability. On July 2, based on this evaluation and his own examinations, Porter found Gregory able to return to light-duty work with restrictions commensurate with the suggestions of Healy-Osborne. In response to an inquiry by the shipyard's doctor, Porter noted that Gregory's problem was likely permanent.

On July 27, 1990, Gregory was examined by Dr. Robert Neff, another colleague of Williamson's. Neff found that Gregory was

3

exaggerating his pain response and engaging in voluntary limitation of motion on exam. When Gregory continued to insist that he was disabled from working, Bobbitt referred him to Dr. Steven Blasdell, a orthopaedic surgeon, on December 12, 1991. Blasdell directed a comprehensive isodynamic back test, which demonstrated ten abnormal indicators and multiple parameters indicating that Gregory's purported back pain was "non-physiological." Nonetheless, Blasdell concluded that Gregory suffered from "moderate back dysfunction," and he prescribed a course of work hardening. Blasdell placed no restrictions on Gregory and opined that he was able to return to his work at the shipyard. Gregory was eventually discharged from the work hardening program.[2]

Williamson performed another examination on September 23, 1993, after he obtained and reviewed a more recent MRI scan. Williamson noted a discrepancy between his own physical examination and observations and Gregory's subjective complaints and voluntary limitations of motion. Williamson concluded that Gregory could return to work where lifting of no more than fifty pounds was required. Williamson testified that the lifting restriction was merely a precaution, rather than a necessary limitation, and that Gregory could perform any work that he performed before the injury.

In support of its claim for § 908(f) relief, Newport News submitted shipyard clinic records, noting a July 1, 1987,"low back strain" which was treated with heat and analgesics, but which required no time off from work or any type of limited duty. Further, the records show a thoracic muscle strain following a June 21, 1988, employment injury. As a result of this muscle strain, Gregory was assigned light duty for one week. In addition, the record also contains reports of two doctors. Dr. J. A. Harmon, the medical director of Newport News, reviewed Gregory's clinical and medical records on October 11, 1990, and determined that any disability suffered by Gregory was "clearly an aggravation of . . . prior back problems." Similarly, on June 21, 1994,

_____

[2] It is unclear why Gregory was dismissed from the program. Gregory contends that he was discharged because he was unable to read and sign the appropriate forms. Newport News contends that Gregory was uncooperative and exhibited lack of effort, self-limiting behavior, and poor motivation.

4

Dr. James Hall reviewed Gregory's medical records and determined that any permanent disability was caused by "the cumulative effect . . . of chronic back injuries" which would constitute a serious and chronic pre-existing condition which would cause any cautious employer to refuse to hire Gregory for manual labor.

An ALJ's decision is statutorily required to include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). Strict adherence to this statutorily-imposed obligation is critical to the appellate review process. See See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994). When faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject the contradictory evidence and explain his rationale for doing so. Id.

On the current record, we are unable to determine how the ALJ reached his decision. Drs. Blasdell and Williamson, found credible by the ALJ, stated that Gregory was exaggerating his symptoms and that there was no medical basis for the imposition of any restrictions. Although Williamson did suggest that Gregory not lift over fifty pounds, such a precaution would not prevent Gregory from performing his previous employment, according to one description of Gregory's positions.[3]

Further, the ALJ did not explain why he rejected the opinion of Neff that Gregory was exaggerating his pain response and consciously limiting his movement. This finding was supported by the results of the 1991 back test, and the observations of Blasdell, Williamson, and Healy-Osborne.

The ALJ also found that Gregory was unable to lift over twenty pounds, thereby relegating him to light work. Neither Williamson nor

_____

[3] There is some confusion in the record as to what manual labor Gregory was required to perform. According to the Dictionary of Occupational Titles, sandblasting and painting are classified as medium duty work requiring no lifting over fifty pounds. However, Gregory testified that he was required to lift paint cans weighing approximately fifty to sixty pounds.

5

Blasdell placed such restrictions on Gregory, so it is unclear whether the ALJ considered all the relevant record evidence. The ALJ held further that, although Gregory could work at some light labor jobs, he could not return to his work as a painter/sandblaster. Presumably, the ALJ found the requirements of Gregory's previous job to be beyond Gregory's capacity. However, the ALJ did not explain how he resolved the conflicting evidence regarding these determinations.

Regarding the § 908(f) issue, the ALJ's findings are similarly deficient. Although he rejected Hall and Harmon's reports as "unconvincing," he does not explain why these doctors' opinions were discredited. Section 908(f) limits the employer's liability for compensation payments for permanent disabilities when the claimant had a pre-existing permanent partial disability, and the disability which exists after the work-related injury is not due solely to that injury, but is a combination of both that injury and the existing permanent partial disability, and is materially and substantially greater than the work injury alone would cause. See Lawson v. Suwanee Fruit & S.S. Co., 336 U.S. 198, 200 (1949).

The reports of Hall and Harmon may satisfy these criteria. Both Hall and Harmon opined that Gregory's pre-existing multiple back injuries were disabling and would have motivated an employer to dismiss or not to hire Gregory. The evidence also establishes that the employer was aware of these injuries as they are contained in Newport News' own clinic records. Finally, Hall and Harmon asserted that Gregory's disability, to the extent he suffered from one, was the result of no one injury, but rather the cumulative effect of his multiple pre-existing back strains.[4]

_____

[4] Hall and Harmon's reports do not specifically state that Gregory's ultimate disability is materially and substantially greater than a disability caused by his 1989 injury alone would have been. See Director, OWCP v. Newport News Shipbuilding, 8 F.3d 175, 186 n.9 (4th Cir. 1993) (evidence of "combined" cause is insufficient to satisfy "materially and substantially" requirement). Nonetheless, the ALJ did not address this standard and instead based his decision on his unexplained rejection of Newport News' evidence of a chronic and serious pre-existing injury which combined with the 1989 injury to cause Gregory's present disability. See Dayton v. Consolidation Coal Co., 895 F.2d 173, 175 (4th Cir. 1990) (appellate court must confine itself to review of grounds upon which ALJ relied in reaching his/her decision); see also Hobbs v. Clinchfied Coal Co., 45 F.3d 819, 822 (4th Cir. 1995) (ALJ has obligation to explain reasons for crediting or rejecting evidence).

6

The ALJ has not told us why he rejected the § 908(f) evidence favorable to Newport News in making his ruling, except to say that he found some of it "unconvincing." Further, the ALJ specifically found certain medical reports "credible" that contradicted his factual findings regarding disability. A bare statement of conclusions does not demonstrate a reasoned choice. Thus far, the ALJ has failed to make specific findings of fact on material issues and failed to explain his implicit rejection of certain evidence. See Cotter v. Harris, 642 F.2d 700, 706-08 (3d Cir. 1981).

While we express no opinion on the merits of Gregory's claim, we vacate the BRB's decision, remand to the BRB, and instruct it further to remand the case to the ALJ with directions to reweigh the evidence and provide an adequate statement of the reasons for his findings. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

7