**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BUFFALO MINING COMPANY,
Petitioner,

v.

EARL MILLER; DIRECTOR, OFFICE OF

WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

No. 97-2744

On Petition for Review of an Order
of the Benefits Review Board.
(97-259-BLA)

Argued: October 28, 1998

Decided: November 19, 1998

Before WILKINSON, Chief Judge, and LUTTIG and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Steele Mattingly, JACKSON & KELLY, Mor-
gantown, West Virginia, for Petitioner. Helen Hart Cox, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for
Respondent Director; Ray Edmond Ratliff, Jr., Charleston, West Vir-
ginia, for Respondent Miller. **ON BRIEF:** Douglas A. Smoot, Kathy

L. Snyder, JACKSON & KELLY, Charleston, West Virginia, for Petitioner. Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Buffalo Mining Company petitions for review of an order of the Labor Benefits Review Board upholding the refusal of administrative law judge (ALJ) to modify an award of benefits to Earl Miller under the Black Lung Benefits Act. See 30 U.S.C.A.§ 901 et seq. (West 1986 & Supp. 1998). Because the ALJ's findings are supported by substantial evidence, we affirm.

I.

Miller worked in the coal mines for over thirty years. He retired in June 1982 and a month later applied for benefits under the Black Lung Benefits Act. A formal hearing on the claim was held on February 19, 1987 before an ALJ in Charleston, West Virginia. The ALJ issued a Decision and Order awarding benefits on December 15, 1987. Buffalo appealed this decision to the Benefits Review Board. On August 29, 1991, the Board affirmed the ALJ's decision in part and remanded the remaining issues for further review and more detailed explanations of the ALJ's findings.

On April 8, 1992, the ALJ issued a revised Decision and Order in response to the remand. In this order, the ALJ again awarded benefits to Miller and, in response, Buffalo again appealed to the Board. On

November 23, 1993, the Board remanded the case once more for further explanation of the ALJ's decision.

The ALJ issued its revised Decision and Order after this second remand on June 16, 1994. Once again, the ALJ awarded benefits to Miller and, once again, Buffalo appealed. On February 24, 1995, the Board affirmed the ALJ's award of benefits in its entirety. Buffalo then filed a notice for appeal to this court, which was voluntarily dismissed without prejudice.

Instead, Buffalo submitted a motion for modification of the ALJ's Decision and Order. In that motion, Buffalo argued that it was entitled to modification based on mistake of fact and change in medical condition, both of which provide valid grounds under the regulations for modifying an order. See 20 C.F.R. § 725.310 (1998). Upon request by Buffalo, the District Director referred the motion back to the ALJ, who issued a Decision and Order denying modification on October 3, 1996. Buffalo again appealed to the Board, which issued an order on October 24, 1997 affirming the ALJ's denial of modification. Buffalo now appeals to this court.

II.

We review decisions of the Benefits Review Board to ensure that it properly followed the standard of review prescribed for it by statute. DeHue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). The Board reviews an ALJ's factual findings to determine if such findings are supported by substantial evidence in the record considered as a whole. 33 U.S.C.A. § 921(b)(1986). See also O'Keeffe v. Smith, Hinchman & Grylls Assoc., Inc., 380 U.S. 359, 362 (1965). Under this standard, "[t]he ALJ has sole power to make credibility determinations and resolve inconsistencies in the evidence." Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1096 (4th Cir. 1993) (citations omitted). We review the record independently and must affirm the ALJ's decision if supported by substantial evidence, Thorn v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir. 1993), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). We review the Board's legal conclusions de novo. DeHue, 65 F.3d at 1193.

III.

In order to collect benefits under the Act, a claimant must demonstrate that: (a) he suffers from pneumoconiosis; (b) his pneumoconiosis arose out of employment in the coal mines; (c) he has a totally disabling respiratory or pulmonary condition; and (d) this total disability was caused, at least in part, from the pneumoconiosis. 20 C.F.R. §§ 718.202-204 (1998); Milburn Colliery Co. v. Hicks, 138 F.3d 524, 529 (4th Cir. 1998); Robinson v. Pickands Mather & Co., 914 F.2d 35, 36, 38 (4th Cir. 1990).

The ALJ in this case found that Miller met all of these requirements and that Buffalo failed to establish that modification of the benefits award was warranted due to change of condition or mistake of fact. The Board agreed, concluding that the ALJ's findings were rational, consistent with applicable law, and supported by substantial evidence. Buffalo raises two issues on appeal. First, the company maintains that it properly challenged the ALJ's finding of the existence of pneumoconiosis. Second, it asserts that the ALJ's finding that Miller was entitled to benefits was based on an improperly selective analysis of the record evidence. In addressing the second and principal issue, we will assume that Buffalo did properly challenge the pneumoconiosis finding.

A.

The first step toward an award of benefits under the Act is proof of the existence of pneumoconiosis. This can be accomplished through the use of traditional x-rays, biopsy or autopsy, the statute's presumptions (none of which applies in this case), and "sound medical judgment" of a physician. 20 C.F.R. § 718.202(a) (1998). The ALJ in this case relied on x-ray and medical opinion evidence to support his conclusion that Miller suffers from pneumoconiosis.

There was some conflict in the x-ray evidence submitted in this case. The ALJ reviewed all such evidence and concluded that the vast majority of the x-ray readings supported a conclusion that Miller indeed suffers from pneumoconiosis. Dr. Wheeler was the only physician to conclude, based on the x-ray evidence, that Miller does not have pneumoconiosis. The regulations provide that, in the face of

4

conflicting x-ray evidence, the ALJ is to consider the qualifications of the physicians offering opinions. Id.§ 718.202(a)(1). The ALJ did just that, noting that Drs. Sargent and Bassali were as qualified as Dr. Wheeler and that both had concluded that Miller's x-rays revealed pneumoconiosis. This diagnosis was confirmed by Drs. Renn, Gaziano, Zaldivar, Subramaniam and Bofill. In light of the overwhelming x-ray evidence in favor of a pneumoconiosis diagnosis, we find that substantial evidence supported the ALJ's evaluation of the x-ray evidence.

This evaluation alone, however, is not sufficient to prove the existence of pneumoconiosis. By statute, all relevant evidence must be considered before a final decision can be rendered. See 30 U.S.C.A. § 923(b) (Supp. 1998); Walker v. Director, OWCP, 927 F.2d 181, 184-85 (4th Cir. 1991). In this context, Buffalo argues that the ALJ failed to address the CT scan evidence in its order. The Board held that the ALJ did in fact weigh this evidence. We agree.

The ALJ initially noted that CT scan evidence does not fall within the category of traditional x-ray evidence and can not alone form the basis of proof that a claimant suffers from pneumoconiosis under § 718.202(a) of the regulations. The ALJ, however, did not dismiss the evidence. Rather, he reasoned that the list of "objective medical evidence" found in the regulations was not exhaustive and concluded that CT scan evidence could properly be considered in that category. See 20 C.F.R. §§ 718.107, 718.202(a)(4) (1998). Based on this analysis, the ALJ considered Miller's CT scan evidence in conjunction with other medical opinion evidence under § 718.202(a)(4) of the regulations. We find this to be a fair reading of the statute and its regulations and do not fault the ALJ's approach to reviewing the CT scan evidence. See Melnick v. Consolidation Coal Co. , 16 B.L.R. 1-31 (1991).

We now turn to the sufficiency of the ALJ's review of the CT scan and medical opinion evidence. Several of the doctors involved in this case considered and evaluated the results of a March 30, 1994 CT Scan performed on Miller. The ALJ gave little probative weight to the reports of Drs. Fishman and Wheeler because of the limited scope of their evaluation. He explained that these doctors "referred to nothing in the history or medical record other than x-ray and CT scan evi-

5

dence" and that they developed their opinions without consideration of the "abundant medical evidence in the record." The ALJ also found the credentials of these doctors to be less relevant than those of other doctors testifying in the case. Because Dr. Wiot's credentials were similar to those of Drs. Fishman and Wheeler and his evaluation was based on the same CT scan report, the ALJ also discounted Dr. Wiot's evaluation.

The ALJ next rejected the reports of Dr. Castle and Dr. Crisalli because they relied on the CT scan reports of other physicians without ever considering the CT scan independently. The ALJ further reasoned that Dr. Fino's report should be discounted because, although Dr. Fino weighed the CT scan evidence independently, he never personally examined Miller. Thus the ALJ relied on Dr. Zaldivar's report, because it constituted an independent evaluation of the CT scan, the x-ray readings, and Miller's medical record. The ALJ is given wide discretion in determining whether or not a claimant suffers from Black Lung disease. See Clark v. Karst-Robbins Coal Co., 12 B.L.R. 1-149 (1989); Fields v. Island Creek Coal Co., 10 B.L.R. 1-19 (1988). We conclude that the ALJ here was well within that discretion in crediting Dr. Zaldivar's opinion over the opinions of other physicians in the record.

Finally, we note that the ALJ properly dismissed Dr. Srichai's reference to biopsy evidence, another potential method of proving pneumoconiosis. See 20 C.F.R. § 718.202(a)(2)(1998). In order to consider such evidence, copies of the actual pathology report and surgical note are required when surgery has been performed on a lung, as was the case here. See id. § 718.106(a). Because Dr. Srichai failed to supply such documentation, the ALJ properly discounted his opinion, which was based on reference to such reports.

B.

The next step in establishing eligibility for benefits is proof that the pneumoconiosis that exists arose, at least partially, from employment in the coal mine industry. Id. § 718.203. Because Miller was employed in the coal mines for more than ten years, he is entitled to a rebuttable presumption that his pneumoconiosis arose out of that employment. Id. Buffalo failed to rebut this presumption. Hence, Mil-

6

ler's pneumoconiosis was properly characterized as having arisen out of his employment in the mines.

C.

The third step required by the Act is a determination that the miner suffers a total disability due to pulmonary or respiratory impairment. Id. § 718.204. See also Jewell Smokeless Coal Corp. v. Street, 42 F.3d 241, 243 (4th Cir. 1994). The ALJ here concluded that Miller suffers such a total impairment. The ALJ made this determination based on medical opinion evidence and, as the regulations dictate, considered all contrary probative evidence in so doing. 20 C.F.R. § 718.204(c).

Looking at the record as a whole, we find substantial evidence to support the ALJ's decision to credit Dr. Rasmussen's report concerning total impairment. The ALJ carefully considered Dr. Rasmussen's opinion and supporting evidence. He also reviewed the competing reports and provided a sufficient basis for rejecting them. For example, the ALJ explained that Dr. Crisalli questioned the validity of Dr. Rasmussen's test but failed to provide an adequate reason for his refusal to rely on that data. Similarly, the ALJ dismissed the opinions of Drs. Fino, Zaldivar, and Castle for lack of explanation of their findings, concluding that none of these four reports was as well reasoned as that of Dr. Rasmussen. See Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 822 (4th Cir. 1995) (upholding ALJ's decision because "the ALJ properly stated reasons why he discounted the opinions of [certain] doctors").

D.

Finally, the ALJ found that Miller's total disability was caused, at least in part, by pneumoconiosis. See Robinson , 914 F.2d at 38. In reaching this conclusion, the ALJ gave "little weight" to Dr. Zaldivar's opinion. As noted above, the ALJ previously credited Dr. Zaldivar's opinion with respect to the existence of pneumoconiosis, considering it the most reliable of the medical opinions on that issue. Buffalo contends that this partial reliance on Dr. Zaldivar's opinion amounts to a selective use of the evidence in violation of the mandate to review the record as a whole and to consider all relevant evidence before making a final determination. See 33 U.S.C.A. § 921(b)

7

(1986); 30 U.S.C.A. § 923(b) (Supp. 1998). This argument is without merit. As long as the ALJ properly supports each decision and makes conclusions that are neither inconsistent nor illogical, he is permitted, in his discretion, to rely on certain findings by a physician without adopting that doctor's entire report. This practice does not amount to a prohibitively selective review of the record, nor does it violate the mandate to consider the record as a whole.

In this case, the ALJ did not ignore any portion of the record. Nor did he act inconsistently in relying on Dr. Zaldivar's opinion with respect to the existence of pneumoconiosis while dismissing that part of the opinion dealing with causation of total impairment. Rather, the ALJ explained his decision to discount the latter portion of Dr. Zaldivar's opinion based on that physician's failure to diagnose total impairment. As noted above, the ALJ properly concluded that Miller does suffer a total impairment. Dr. Zaldivar disagreed. Therefore Dr. Zaldivar's opinion with respect to causation vel non of any impairment is of little probative value. Cf. Grigg v. Director, OWCP, 28 F.3d 416, 419 (4th Cir. 1994)(an opinion concerning the patient's impairment based on a mistaken finding of no pneumoconiosis is "not worthy of much, if any, weight").

Similarly, the ALJ appropriately discounted the opinions of Drs. Fino, Crisalli and Castle because their opinions were premised on an erroneous finding that Miller does not suffer from pneumoconiosis. See id. Finally, there is substantial evidence-- the opinions of Drs. Rasmussen and Srichai -- to support the ALJ's finding that Miller's total disability was caused, at least in part, by pneumoconiosis.

IV.

For these reasons, we affirm the Board's order upholding the ALJ's refusal to order modification.

AFFIRMED

8