UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1516

LINDA J. MORGAN, widow of Noble Morgan,

Petitioner,

versus

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS; ELKAY MINING COMPANY,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(04-473-BLA)

Argued: September 27, 2007      Decided: December 20, 2007

Before NIEMEYER and MICHAEL, Circuit Judges, and T. S. ELLIS, III,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished opinion. Senior Judge Ellis wrote the
opinion, in which Judge Niemeyer and Judge Michael joined.

**ARGUED:** Leonard Joseph Stayton, Inez, Kentucky, for Petitioner.
Ashley M. Harman, JACKSON & KELLY, P.L.L.C., Morgantown, West
Virginia, for Respondents. **ON BRIEF:** Douglas A. Smoot, JACKSON &
KELLY, P.L.L.C., Morgantown, West Virginia, for Respondent Elkay
Mining Company.

Unpublished opinions are not binding precedent in this circuit.

ELLIS, Senior District Judge:

Petitioner Linda Morgan seeks review of a decision and order of the United States Department of Labor Benefits Review Board (Board) affirming the Administrative Law Judge's (ALJ) denial of her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. (the Act). Because the factual findings of the ALJ are supported by substantial evidence and the legal conclusions of both the ALJ and the Board are consistent with applicable law, we affirm.

I.

Noble Morgan (Morgan), a former coal miner, died on July 7, 1999, at the age of 61. During his years of employment with the coal mines, Morgan engaged primarily in underground work as a roof bolter, working in dusty conditions. He also worked as a carpenter for several years, and then later as a security guard for a coal mine, where he was not exposed to a significant amount of coal dust. Morgan filed two applications for black lung benefits during his lifetime, the first in 1973 and the second in 1997. Both of Morgan's claims for living black lung benefits were denied by the District Director.

Two years prior to his death, Morgan was diagnosed with colon cancer. Although he was treated for the cancer and underwent chemotherapy, the medical evidence reflects that at some point

2

prior to his death, the cancer may have metastasized to his spine and possibly other areas, as well. Additionally, the record reflects that Morgan suffered from congestive heart failure and smoked tobacco for more than forty-five years at the rate of a pack of cigarettes or more per day.

Morgan's death certificate lists his immediate cause of death as "lobar pneumonia" and indicates that an autopsy was performed of the "lung only." J.A. 92. The autopsy report was issued by Dr. Alex Racadag on July 12, 1999, five days after Morgan's death. Based on his examination of Morgan's lung tissue, Dr. Racadag rendered a diagnosis of "acute bronchopneumonia and lobar pneumonia," "mild simple coal worker's pneumoconiosis with focal emphysema" and "pleural adhesions," noting simply, as a "comment," that these conditions "probably contributed to the patient's morbidity and subsequent demise." J.A. 93.

On July 29, 1999, petitioner, Morgan's surviving spouse, filed a timely claim for survivor's benefits under the Act. On October 4, 1999, the District Director denied petitioner's claim for survivor's benefits. Petitioner then requested a formal hearing before the Office of Administrative Law Judges and a de novo hearing was eventually held before an ALJ on February 28, 2002. On August 27, 2002, following the presentation of evidence and the submission of written closing arguments, the ALJ denied petitioner's claim for black lung survivor's benefits. J.A. 352-

3

73. The ALJ's August 27, 2002 decision included a lengthy description of Morgan's work and medical history, as well as a detailed summary of the medical evidence in the administrative record, including chest x-rays, pulmonary function studies, arterial blood gas studies and various physicians' reports. In the end, the ALJ found that petitioner had established the existence of legal pneumoconiosis on the basis of chest x-ray and certain medical opinion evidence, but concluded nonetheless that petitioner had failed to establish that the pneumoconiosis caused, substantially contributed to, or hastened Morgan's death, a required element for entitlement to survivor's benefits under the Act. J.A. 368-71.

Petitioner sought review of the ALJ's August 27, 2002 decision, arguing essentially that the particular medical opinions relied on by the ALJ to support his causation conclusion could carry little or no weight given that these physicians did not diagnose Morgan with pneumoconiosis, as did the ALJ. Thus, on September 12, 2003, the Board remanded petitioner's claim to the ALJ for further consideration in light of Scott v. Mason Coal Co., 289 F.3d 263 (4th Cir. 2002), wherein we recognized that when a medical opinion is in "direct contradiction" to the ALJ's finding that a miner suffers from pneumoconiosis arising out of his coal mine employment, the ALJ can give weight to that opinion only if he provides specific and persuasive reasons for doing so, and even

4

then, the opinion can "carry little weight, at the most." Id. at 269.

On remand, and by Order dated February 12, 2004, the ALJ again denied petitioner's request for survivor's benefits, concluding, as before, that petitioner was unable to sustain her burden of proving that pneumoconiosis caused or contributed to Morgan's death. J.A. 410. In reaching this result, the ALJ relied primarily on the causation opinions of four physicians, namely Dr. Everett F. Oesterling, Dr. P. Raphael Caffrey, Dr. Stephen T. Bush and Dr. Samuel V. Spagnolo.[1] Specifically responding to the concerns expressed by the Board in their remand order, the ALJ found, inter alia, that these four physicians had diagnosed symptoms consistent with, and therefore not in direct contradiction to, the ALJ's finding of legal pneumoconiosis and thus, that their opinions could be relied on under Scott. J.A. 408-10. A brief summary of these four physicians' findings illustrates this point.

First, Dr. Oesterling, a pathologist board-certified in anatomic and clinical pathology as well as nuclear medicine, reviewed Morgan's autopsy slides and medical records. He found the "most significant aggregate of mine dust deposition" in Morgan's lung tissue to be approximately 0.5 millimeters in greatest

---

[1]The ALJ either discounted or rejected the opinions of several other physicians, including Dr. Racadag, Dr. Francis H.Y. Green, Dr. Richard Naeye, Dr. Erika Crouch, Dr. Gregory Fino, Dr. James R. Castle, Dr. Mohammed Ranavaya, Dr. D.L. Rasmussen and Dr. Edward Velasco.

5

dimension, a size "not sufficient to warrant a diagnosis of coalworkers' pneumoconiosis." J.A. 206-07. Dr. Oesterling reported that he observed "limited black pigment contained within a loose matrix of pink fibers" in the lung tissue; he also identified "abundant numbers of elongate birefringent silica crystals," noting specifically that "the dust is indeed of coalmine origin." J.A. 207. He nonetheless opined that "[d]espite the presence of this mine dust, the quantities are insufficient to warrant more than a comment that these lungs demonstrate anthracotic pigmentation." J.A. 207. Noting the presence of pneumonia and emphysema in Morgan's lungs, Dr. Oesterling found those conditions attributable to Morgan's long-time cigarette use rather than to his exposure to coal dust. He further concluded that the extensive pneumonia that led to Morgan's death was caused by congestive heart failure, cancer, and the resultant therapies associated with cancer. Finally, and particularly relevant here, he concluded that "the limited structural change [in the lungs] due to mine dust exposure could have in no way hastened or contributed to [Morgan's] death." J.A. 209. Put differently, Dr. Oesterling concluded that "mine dust exposure could not have produced lifetime disability nor could it have in any way contributed to or accelerated [Morgan's] death." J.A. 207.

Dr. Caffrey, also a board-certified pathologist, observed a "moderate amount of anthracotic pigment with a few tiny hilanized

nodules" when examining the autopsy slides of Morgan's lung tissue. J.A. 186. He likewise observed "some birefringent particles present" in the lung tissue, noting that "the changes on the left side are very minimal" and that "in the lymph node tissues there is only a small amount present." J.A. 186. Dr. Caffrey further noted that "[t]here is only a very minimal amount of anthracotic pigment present and most of this is subpleurally located with a very minimal amount around a few blood vessels and respiratory bronchioles." J.A. 187. He stated definitively that he did not see "any anthracotic pigment with associated reticulin deposits and focal emphysema." J.A. 187. Thus, he concluded that "[t]here is no evidence of silicosis within the lung tissue, there is no evidence of complicated pneumoconiosis, and there is no evidence of simple coal worker's pneumoconiosis either in my opinion." J.A. 187. On this issue, he specifically stated, inter alia, the following:

> It is my opinion...that Mr. Noble Morgan definitely did not have coal worker's pneumoconiosis or any other occupational lung disease. I say this because there is only a very minimal amount of anthracotic pigment within the sections of lung tissue. I definitely do not agree with the Autopsy Pathologists's diagnosis of mild simple worker's pneumoconiosis and I definitely do not agree with...Frances H.Y. Green's diagnosis of simple coal worker's pneumoconiosis of mild severity.

J.A. at 189. Dr. Caffrey concluded that "the minimal amount of anthracotic pigment, coal dust, found in [Morgan's] lungs definitely did not cause him pulmonary or respiratory impairment

7

and did not cause him any disability nor did it play any role in, or hasten, his death." J.A. 191.

Dr. Bush, a board-certified anatomical and clinical pathologist, likewise acknowledged the presence of coal mine dust in Morgan's lung tissue, but concluded that "the degree of change from coal mine dust in the lungs is too limited in degree and extent to have any contribution to the events leading to death." J.A. 198. He further concluded that "[t]he coal dust deposited in the lungs of Mr. Morgan produced no barrier to lung function and therefore could not have hastened death by any means including a contribution to hypoxemia." J.A. 198. In reaching these conclusions, Dr. Bush noted, inter alia, that

> [t]he reports of the autopsy prosector [Dr. Racadag] and Dr. Green exaggerate the microscopic changes in the lung related to dust deposition. In addition, they exaggerate the effects of these proposed changes on lung function. They incorrectly force a theory of causation. Mr. Morgan died as a result of carcinoma and its complications, a straightforward and unfortunately common event.

J.A. 198.

Finally, Dr. Spagnolo, a board-certified physician in internal medicine and pulmonary disease, concluded that Morgan's death was "a direct result of his invasive and metastatic cancer in association with complications related to cancer chemotherapy, i.e. bronchopneumonia, lung fibrosis and probable sepsis." J.A. 128. While Dr. Spagnolo acknowledged that Morgan experienced symptoms of "coughing, wheezing and sputum production," he attributed these

8

symptoms to Morgan's long-term cigarette smoking.  Id.  He also attributed Morgan's "exertional chest pain, two-pillow orthopnea and ankle edema" to his underlying coronary artery disease.  Id. Dr. Spagnolo concluded that Morgan had no "pulmonary/respiratory impairment attributable to pneumoconiosis or related to his prior coalmine employment" and that "[n]one of his symptoms, complaints, or medical conditions is related to his coal dust exposure or coalmine employment."  J.A. 129.  He further found that there was "not sufficient evidence in the lung tissue to justify a diagnosis of coal workers' pneumoconiosis."  J.A. 134.  On the basis of his review, Dr. Spagnolo concluded that "Morgan's death was unrelated to and not hastened, even briefly, by pneumoconiosis nor was pneumoconiosis a contributing factor in his death."  J.A. 129. Alternatively, Dr. Spagnolo opined that even assuming Morgan had some degree of pneumoconiosis, any such "dust-related lung disease was far too limited to have contributed to or hastened...death." J.A. 134.

Based primarily on the causation opinions of Drs. Oesterling, Caffrey, Bush and Spagnolo, the ALJ concluded that while Morgan's legal pneumoconiosis had been established for purposes of the Act, petitioner had not sustained her burden of proving this condition caused or hastened Morgan's death as required for petitioner to be entitled to black lung survivor's benefits.  J.A. 410.

9

Petitioner's claim was therefore denied by the ALJ on remand, by Order dated February 12, 2004.  J.A. 411.

Following the ALJ's second denial of petitioner's claim for black lung survivor's benefits, petitioner again appealed the ALJ's decision to the Board.  This time, the Board affirmed the ALJ's denial of benefits, finding specifically that the ALJ's decision "is supported by substantial evidence and is in accordance with law."  J.A. 449.  Petitioner then filed a timely appeal of the Board's March 30, 2005 Decision and Order to this court.

II.

We review the Board's decision upholding the ALJ's denial of survivor's benefits to petitioner to determine whether the Board correctly found that the ALJ's factual findings were supported by substantial evidence in the record.  See Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir. 2000).  To do so, we review the record independently, assessing the ALJ's findings under the substantial evidence standard.  Scott, 289 F.3d at 267.  In this regard, "[s]ubstantial evidence consists of sufficient relevant evidence to convince a reasonable mind that the evidence is adequate to support a conclusion."  Id. (citations omitted).  Thus, applying this standard, "we must affirm the Board if it properly determined that the ALJ's findings are supported by substantial evidence."  Doss v. Director, Office of Workers' Comp. Programs, 53

10

F.3d 654, 659 (4th Cir. 1995). We review the ALJ's and the Board's conclusions of law <u>de</u> <u>novo</u>. <u>See Scott v. Mason Coal Co.</u>, 60 F.3d 1138, 1140 (4th Cir. 1995).

### III.

The regulatory standards applicable to petitioner's claim are clear. Specifically, to be entitled to survivor's benefits under the Act, a petitioner must establish that the coal miner's death was "due to pneumoconiosis" in accordance with 20 C.F.R. § 718.205. In this regard, for purposes of adjudicating survivors' claims filed, as here, on or after January 1, 1982, death is considered to be "due to pneumoconiosis" if any of the following criteria are met:

(1) Where competent medical evidence establishes that pneumoconiosis was the cause of the miner's death, or

(2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or

(3) Where the presumption set forth at § 718.304 is applicable.[2]

20 C.F.R. § 718.205(c). Thus, the regulations expressly provide that "survivors are not eligible for benefits where the miner's

---

[2]It is undisputed that this presumption does not apply here. Section 718.304 provides, in pertinent part, that "[t]here is an irrebuttable presumption that...a miner's death was due to pneumoconiosis...if such miner...suffered from a chronic dust disease of the lung which," when diagnosed by chest x-ray, biopsy, autopsy or other means, yields certain medical findings not present in the instant case. 20 C.F.R. § 718.304.

death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death," that is, if the pneumoconiosis "hasten[ed] the miner's death."  20 C.F.R. § 718.205(c).

For purposes of the Act, "pneumoconiosis" means "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a).  This definition includes both the medical, or "clinical" definition of pneumoconiosis, as well as the broader statutory definition of "legal" pneumoconiosis.  Id.; see also Island Creek Coal Co. v. Compton, 211 F.3d 203, 210 (4th Cir. 2000). In this regard, the term "legal pneumoconiosis" includes, but is not limited to, "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2).[3]  Moreover, the phrase "arising out of coal mine

---

[3]Clinical pneumoconiosis, in contrast, is more narrowly defined as consisting

> of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment.  This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

20 C.F.R. § 718.201(a)(1).

employment" includes "any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment."  20 C.F.R. § 718.201(b).  Given this, it is clear, for example, that "a medical diagnosis finding no coal workers' pneumoconiosis is not equivalent to a legal finding of no pneumoconiosis," as the legal definition of pneumoconiosis set forth in § 718.201 is significantly broader than the medical definition of coal workers' pneumoconiosis.  Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995).  Indeed, legal pneumoconiosis, unlike medical or clinical pneumoconiosis, "also encompasses 'diseases whose etiology is not the inhalation of coal dust, but whose respiratory and pulmonary symptomatology have nonetheless been made worse by coal dust exposure.'"  Lewis Coal Co. v. Director, OWCP, 373 F.3d 570, 577  (4th Cir. 2004) (quoting Clinchfield Coal Co. v. Fuller, 180 F.3d  622,  625  (4th  Cir.  1999)).   In  other  words,  legal pneumoconiosis has "a broad definition, one that effectively allows for the compensation of miners suffering from a variety of respiratory problems that may bear a relationship to their employment in the coal mines." Rose v. Clinchfield Coal Co., 614 F.2d  936, 938 (4th Cir. 1980).  Legal pneumoconiosis "includes, for example, emphysema, asthma, and chronic bronchitis, if triggered by coal mine employment."  Dante Coal Co. v. Director,

13

<u>OWCP</u>, 164 Fed. Appx. 338, 341 n.2 (4th Cir. 2006) (citations omitted).

These principles, applied to the administrative record at issue here, compel the conclusion that the ALJ's denial of petitioner's claim for survivor's benefits under the Act was supported by substantial evidence and must be affirmed. And, significantly, although petitioner contends the ALJ erred in relying on the opinions of Drs. Oesterling, Caffrey, Bush and Spagnolo, given that these physicians did not explicitly diagnose Morgan with pneumoconiosis — legal or otherwise — it is clear the ALJ's reliance on these opinions was entirely proper and consistent with <u>Scott</u> and its progeny. Indeed, unlike the situation contemplated in <u>Scott</u>, this is not a case where the doctors relied on by the ALJ "opined that [Morgan] did not have legal or medical pneumoconiosis, did not diagnose any condition aggravated by coal dust, <u>and found no symptoms related to coal dust exposure</u>." <u>Scott</u>, 289 F.3d at 269 (emphasis added). Instead, all four of these physicians "found symptoms consistent with legal pneumoconiosis," including, for example, emphysema, coughing, wheezing, and the undisputed presence of coal dust in Morgan's lung tissue. <u>Scott</u>, 289 F.3d at 269; <u>see</u> <u>supra</u> Part I. Thus, because Drs. Oesterling, Caffrey, Bush and Spagnolo did not premise their causation opinions on an "erroneous finding" contrary to the ALJ's finding of legal pneumoconiosis, and because their respective medical findings did

14

not necessarily contradict the ALJ's finding of legal pneumoconiosis, the ALJ did not err in relying on those physicians' opinions with respect to the issue of causation. See Hobbs, 45 F.3d at 821; Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1195 (4th Cir. 1995).

In the end, the medical opinions relied on by the ALJ provide more than substantial evidence to support the ALJ's conclusion that Morgan's legal pneumoconiosis did not contribute to or hasten his death in accordance with 20 C.F.R. § 718.205(c). Scott, 289 F.3d at 267. Put differently, the opinions of Drs. Oesterling, Caffrey, Bush and Spagnolo constitute "sufficient relevant evidence to convince a reasonable mind that the evidence is adequate to support" the ALJ's denial of petitioner's claim for black lung survivor's benefits under the Act. Id. For this reason, the ALJ's February 12, 2004 decision must be affirmed.

AFFIRMED

15