**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AMOS TOLLIVER,
Petitioner,

v.

P.G. & H. INCORPORATED; DIRECTOR,

OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 97-2141

On Petition for Review of an Order
of the Benefits Review Board.
(96-1669-BLA)

Argued: October 26, 1998

Decided: January 26, 1999

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge,
and MOON, United States District Judge for the Western District
of Virginia, sitting by designation.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** S.F. Raymond Smith, RUNDLE & RUNDLE, L.C.,
Pineville, West Virginia, for Tolliver. Sarah Marie Hurley, Office of
the Solicitor, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Director. Howard Gerald Salisbury, Jr., KAY,

CASTO, CHANEY, LOVE & WISE, Charleston, West Virginia, for P.G.&H. **ON BRIEF:** Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Here we have a black lung benefits claim by Amos Tolliver, a former mine worker. The conclusion that we reach has been arrived at after numerous hearings, reading at least one attempted ending both in Tolliver's favor and in another's favorable to Tolliver's employer. Either, judged on the basis of what evidence there was before the Administrative Law Judge or more complete evidence which would look the other way if it was based on evidence of the employer that was introduced too late, produced evidence that:

1) On July 8, 1987, Tolliver's initial claim was denied by the District Director.

2) Tolliver arranged to object to that disposition before an ALJ. The ALJ denied benefits to Tolliver.

3) Not unexpectedly, Tolliver made a timely appeal to the Benefits Review Board (BRB), which on September 26, 1991 vacated the ALJ's decision and remanded the claim for further proceedings.

4) On January 30, 1992, the ALJ again denied benefits, and that took on finality since Tolliver did not appeal.

2

5) On September 8, 1993, Tolliver filed the instant claim. The District Director made on March 4, 1994 a finding of entitlement to benefits. Following that finding, the employer filed a notice of controversion opposing its liability. On March 14, 1994, the employer was notified that the final date for submission of evidence to the District Director was May 3, 1994.

6) On June 21, 1994, the District Director issued an initial determination awarding benefits. It was based on evidence from Dr. Rasmussen, who examined Tolliver on November 3, 1993. In addition to making an x-ray diagnosis of pneumoconiosis, Dr. Rasmussen performed ventilatory function studies, before and after the administration of a bronchodilator, producing results well in excess of the standards set forth in the applicable regulations as being indicative of total disability and within or near the limits of normal. Arterial blood gas testing was also performed, with normal results at rest and upon incremental exercise, but with a substantial decrease in the claimant's p02 after a subsequent five minute period of "steady state" exercise. Based upon these studies, Dr. Rasmussen concluded that the claimant was rendered "totally disabled for resuming his former coal mine employment with its attendant requirement for heavy manual labor." The employer did not submit any evidence at this time, despite having some of the reports in its possession upon which it would later rely.

7) The employer on June 28, 1994 objected to the award and requested referral of the claim to the Office of Administrative Law Judges for a formal hearing. Such forwarding of the claim to the Office of Administrative Law Judges occurred on August 18, 1994. Such a hearing came on before an ALJ only on December 7, 1994.

8) Here is where things grow confused. In addition to the claimant's testimony, seven exhibits were then received into evidence by the ALJ on behalf of the employer. A report dated July 1, 1994 but not yet filed was received from Dr. George L. Zaldivar, a physician Board certified in internal medicine and the subspecialty of pulmonary diseases, reflecting his examination of the claimant on April 20, 1994. Though finding x-ray evidence of pneumoconiosis, Dr. Zaldivar found only a mild impairment of function, which would not prevent the resumption of his former coal mine employment. Dr. Zaldivar also raised concerns about the data supplied by Dr. Rasmus-

3

sen, which he also reviewed, most notably the discrepancy between the p02 measurements on incremental exercise and those on a subsequent period of steady state exercise. Additional exhibits received consisted of re-readings of chest x-ray films by Dr. Ralph T. Shipley, Dr. Harold B. Spitz, and Dr. Jerome F. Wiot; and consultation reports from Dr. Zaldivar, Dr. W. K. C. Morgan and Dr. Shawn A. Chillag. Those exhibits were admitted into evidence at the hearing by the ALJ, over the objection of counsel for the claimant.

9) Though admitting the employer's proffered exhibits, the ALJ did not give any effect to them. He concluded that since the reports were in the possession of P.G. & H. before the matter was transferred by the District Director on August 18, 1994, they must be excluded pursuant to 20 C.F.R. § 725.456.

10) The ALJ on January 18, 1995 awarded benefits to Tolliver.

11) A timely appeal followed resulting in issuance by the BRB on November 30, 1995 which vacated the ALJ's award of benefits and remanded the case for further consideration. Specifically the BRB reversed the exclusion of the employer's exhibits and ordered that all evidence be considered on remand.

12) The claim was assigned to another ALJ who on September 4, 1996 issued a decision and order denying the claim for benefits. The ALJ concluded that the evidence before him did not establish the presence of a totally disabling respiratory impairment.

13) As might be expected, Tolliver took a timely appeal to the BRB, which affirmed.

DISCUSSION

We review the Board's decisions to determine whether the ALJ's findings, which the Board affirmed, "are supported by substantial evidence and in accordance with law." Jewell Smokeless Coal Corp. v. Street, 42 F.3d 241, 243 (4th Cir. 1994). However, whether the ALJ was required by the applicable regulations to exclude evidence is a legal question that we review de novo. See Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995).

4

I.

Tolliver has contended that his claim before the District Director was pending until August 18, 1994 -- the day that the matter was transferred to the Office of Administrative Law Judges. By contrast, P.G. & H. has asserted that the claim was no longer pending as of May 3, 1994, which was the date that the Commissioner set as a deadline for the submission of evidence, or, at the latest, June 21, 1994, which was the date of the Commissioner's "initial determination," which awarded benefits to Tolliver. In addition, the OWCP Director also has entered the debate, concluding that the transfer date is the appropriate date to select.[1] It concludes that since the report was in the employer's possession but not put in evidence by August 18, 1994, in the absence of a "change of extraordinary circumstances," the Zaldivar report was introduced too late to be considered. 20 C.F.R. § 725.414(e)(1) (1994); Doss v. Itman Coal Co., 53 F.3d 654, 658 (4th Cir. 1995); Adams v. Island Creek Coal Co., 6 BLR 11-677 (1983). We agree with the Director that the date of transfer -- August 18, 1994 -- is the date upon which a claim is no longer pending before the District Director.

We begin our analysis by examining the OWCP Director's view as to the date that a claim is no longer pending before the District Director. The OWCP Director's view is entitled to great deference, "unless it is plainly erroneous or inconsistent with the regulation." Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159 (1987). The OWCP Director now asserts that the claim remained pending until August 18, 1994, the date upon which the District Director transferred the claim to the Office of Administrative Law Judges for further adjudication. As is demonstrated below, that is the best interpretation of the applicable regulations and the one that best advances Congress' goal of ensuring the efficient adjudication of claims. See 43 FED. REG. 36794 (1978).

_____

[1] The Office of the OWCP Director advanced a slightly different position in its brief, stating that the date selected should be a "reasonable time after June 21, 1994." However, it agreed at oral argument that the date of transfer was the appropriate date.

5

Under 20 C.F.R. § 725.410(a)-(b), the District Director may make an initial finding that the claimant is eligible for benefits. Once he or she makes that determination, and the potentially responsible operators are identified, the District Director gathers evidence from the claimant and the operator. See 20 C.F.R.§§ 725.411-.414. After the District Director has gathered the evidence, he may, among other things, make an initial determination awarding benefits to the claimant, which he did here.**2** See 20 C.F.R. § 725.420.

Even after the initial determination, however, the District Director may be required to take further action. The regulations expressly state that "[t]here shall be no right to a hearing[before an ALJ] until the processing and adjudication of the claim by the deputy commissioner has been completed." 20 C.F.R. § 725.450. In the instant case, for example, the District Director had to compute the benefits to be paid to Tolliver, which he did on July 14, 1994. When the District Director completes adjudication and processing, but determines that issues remain unresolved, the District Director must refer the claim to the Office of Administrative Law Judges upon the request of a party. See 20 C.F.R. § 725.421(a). Here, the District Director finished the processing and transferred the claim on August 18, 1994.

P.G. & H.'s position simply is not tenable. It first contends that the proper date should be May 3, which was the deadline for the submission of evidence, and the date relied upon by the BRB to order that the excluded evidence be considered.**3** This cannot be correct because the regulations provide that after the parties submit their evidence, the

_____

**2** The District Director also may schedule a conference, see § 725.416, issue a proposed decision and order, see§ 725.418, or forward the claim to the ALJ, see § 725.421.

**3** We have previously noted that it is unclear whether the BRB's interpretations are entitled to any deference. See Wellmore Coal Corp. v. Stiltner, 81 F.3d 490, 494 n.7 (4th Cir. 1996). While the general rule is no, there may be an exception where the BRB's interpretation relates to its own procedural rules rather than substantive law. Id. However, even if the BRB's decisions would ordinarily be entitled to deference, the decision here is not so entitled because the date it chose is "inconsistent with the regulation[s]." Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159 (1987).

6

District Director may, for example, schedule a conference between the parties in a effort to settle the claim, see 20 C.F.R. §§ 725.415-.416, issue a proposed decision and order deciding the claim, see 20 C.F.R. §§ 725.418, or issue an initial determination (which he did), see 20 C.F.R. §§ 725.420. Given that there had not been any disposition of the claim through the above avenues or any others provided in the regulations, the claim was still pending as of May 3. Cf. BLACK'S LAW DICTIONARY 1134 (6th ed. 1990) (defining "pending" as "begun, but not yet completed . . . in the process of settlement or adjustment").

Alternatively, P.G. & H. contends that at the latest, June 21, 1994 should be declared the date upon which the claim was no longer pending before the District Director. However, that date is not the appropriate choice because the District Director had not yet determined that a hearing was necessary to resolve any outstanding issues, completed the processing of the claim or transferred the claim to the Office of the ALJ. Notably, P.G. & H. did not even request a hearing before an ALJ until June 28, 1994.**4**

Thus, the transfer date is the date most in line with the applicable regulations. Other readings do not take into account the literal meaning of § 725.450. Cf. Doss v. Director, OWCP, 53 F.3d 654, 656 (4th Cir. 1995) (reading 20 C.F.R. §§ 725.414(e)(1) and 725.456(b) literally). Moreover, given the range of dispositions that the District Director has and his concomitant responsibility to complete all adjudication and procedures before a party even has a right to a hearing, it is clear that the Department of Labor intended to resolve claims as early in the process as possible.

Finally, selecting the transfer date as the date upon which a claim is no longer pending before the District Director is not only consistent

_____

**4** The case still was pending on June 28, despite the request. The regulations specifically state that a party is not entitled to a hearing until all processes and adjudication are complete. See 20 C.F.R. § 725.450. Thus, the date that a hearing is requested cannot determine when the case is no longer pending before the District Director and the BRB's holding to the contrary in Hall v. Director, OWCP, 10 BLR 1-107 (1987), is inconsistent with the regulations.

7

with the literal reading of the regulations, but also advances the Department's goals of efficiency and eliminating surprise. The initial drafts of §§ 725.414 and 725.456 contained time limits for submitting evidence to achieve those goals. See 43 F ED. REG. 36794 (1978). The Department found that claims could not be resolved in a timely manner because both employers and claimants were either failing to develop evidence while before the District Director or were withholding evidence already developed until the hearing before the ALJ. Id. Moreover, parties withheld evidence for strategy purposes. Id.

However, the Department received uniformly adverse comments regarding the time limits and subsequently removed them in favor of the current version of those regulations. Id. Despite removing the specific time limits, the Department promulgated regulations that embody its position that "[n]o party should be permitted to obtain and withhold evidence until the [ALJ] hearing." Id. As selection of the transfer date best promotes the Department's intent, it is the appropriate date.

II.

The BRB also required that the ALJ consider three other reports that were offered by a potentially responsible operator later dismissed from the case.[5] The first ALJ excluded them because that operator was dismissed and no other party had moved the reports into evidence. The BRB vacated that decision, concluding that the reports were admissible pursuant to 33 U.S.C. § 923(b) (1994), which requires that "all relevant evidence shall be considered," id., and cases in other circuits permitting evidence submitted by a party later dismissed to remain on the record. See e.g., Hardisty v. Director, OWCP, 776 F.2d 129, 130 (7th Cir. 1985); York v. Benefits Review Board,

_____

[5] Ranger Fuel Corporation ("Ranger") was originally identified as a potentially responsible operator. However, it was determined at the hearing before the first ALJ in January, 1995, that P.G. & H., not Ranger, was the appropriate operator to hold responsible for any liability, as P.G. & H. was Tolliver's last employer and met the other criteria. Thus, Ranger was dismissed from the case at that hearing. However, as the reports were produced in November, 1994, Ranger had already submitted them to the ALJ.

8

819 F.2d 134, 136 (6th Cir. 1987). The reports at issue were produced in November, 1994 by Dr. Zaldivar and two other physicians, Dr. Morgan and Dr. Chillag. Dr. Zaldivar essentially reproduced verbatim his July 1 report. The other two doctors relied heavily on Dr. Zaldivar's July 1 report. On the basis of the November reports and Dr. Zaldivar's July 1 report, the ALJ and the BRB found that Tolliver was not "totally disabled," and therefore not entitled to benefits.[6]

While 33 U.S.C. § 923 does require the District Director and ALJs to consider all relevant evidence, it does not require them to consider such evidence where it is improperly in the record. For example, evidence that was not submitted in a timely manner is not admissible. See Doss v. Director, OWCP, 53 F.3d 654, 656 (4th Cir. 1995) (excluding late evidence pursuant to 20 C.F.R. § 725.456(d)).

Moreover, the cases cited by the BRB are distinguishable. In both Hardisty v. Director, OWCP, 776 F.2d 129, 130 (7th Cir. 1985), and York v. Benefits Review Bd., 819 F.2d 134, 136 (6th Cir. 1987), the OWCP Director was substituted as a party and adopted the evidence as its own. See Hardisty, 776 F.2d at 130; York, 819 F.2d at 136. In the instant case, P.G. & H. neither submitted the evidence nor adopted it as its own. Therefore, the ALJ was left with evidence that was neither submitted by a party nor adopted by one. However, as the evidence remained on the record, and is relevant, P.G. & H.'s failure to act should not bar consideration of it.

However, the evidence still cannot be considered. The three reports in question -- Dr. Zaldivar's November 12, 1994 report; Dr. Morgan's November 14, 1994 report; and Dr. Chillag's November 14, 1994 report -- all substantially rely on and refer to Dr. Zaldivar's July 1, 1994 report. That report, of course, is inadmissable. The admission of these November reports would only serve to undermine the purpose of § 725.456.

_____

[6] The ALJ found Dr. Rassmussen's report unconvincing in light of P.G. & H.'s reports. He described Dr. Rassmussen's reports as "questionable, yet qualifying" and continued to state throughout the report that P.G. & H.'s reports showed little or no impairment.

9

That is a result we find unacceptable. If parties are allowed to admit and rely upon evidence submitted too late merely by submitting other reports later developed that essentially incorporate the late evidence by reference, § 725.456 will have little meaning. Therefore, the three November reports must also be excluded.

III.

In light of our holding that P.G. & H.'s evidence is inadmissible, Tolliver's evidence establishing total disability is the only evidence on the record that addresses his claim that his circumstances have materially changed. See 20 C.F.R. § 725.309(d). Dr. Rassmussen's report is sufficient to establish that Tolliver is"totally disabled" within the meaning of 20 C.F.R. § 718.204(b).

Because Tolliver's previous claim was denied, he had the burden of proving that between the denial of the last claim and the initiation of the new one, there was a "material change in circumstances." 20 C.F.R. § 725.309(d).

In deciding whether a claimant has exhibited a "material change in circumstances," the ALJ examines the evidence to determine whether the claimant has proven, given all relevant evidence after the denial of the prior claim, "at least one of the elements previously adjudicated against him." Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1362 (4th Cir. 1996) (en banc). Since Tolliver established the existence of pneumoconiosis in the earlier proceeding, the only issue is whether he is totally disabled. Id. Thus, Tolliver must ultimately show that he is totally disabled by pneumoconiosis, and that the disability resulted from his work in the mines.

Tolliver presented the report of Dr. Donald Rasmussen to prove that he is totally disabled. A miner is "totally disabled" if pneumoconiosis prevents him or her from: (1) performing his or her usual coal mine work; and (2) engaging in gainful employment similar to that done in the mines. See 20 C.F.R. § 725.204(b) (1994); Jewell, 42 F.3d at 243. The miner may prove total disability by: (1) an irrebuttable presumption arising from evidence of opacities of the lung as shown by x-ray, see 20 C.F.R. § 718.304; (2) proving that pneumoconiosis prevents him or her from: (a) "performing his or her usual coal mine

10

work," 20 C.F.R. § 718.204(b)(1), or (b) working near his or her home at a job requiring the same or similar skills, see 20 C.F.R. § 718.204(b)(2); (3) pulmonary function tests, see 20 C.F.R. § 718.204(c)(1); (4) arterial blood-gas tests, see 20 C.F.R. § 718.204(c)(2); (5) showing suffering from cor pulmonale, see 20 C.F.R. § 718.204(c)(3); or (6) a reasoned medical opinion based on acceptable test procedures, see 20 C.F.R.§ 718.204(c)(4). The claimant has the burden of proving total disability and material change of circumstances by a preponderance of the evidence. See 20 C.F.R. § 718.403 (stating that claimant has the burden of proof); Greenwich Collieries v. Director, OWCP, 513 U.S. 267, 281 (1994) (stating that claimant bears the burden of persuasion under APA§ 7(c)).

Tolliver has shown his total disability through Dr. Rassmussen's reports. Those reports were produced during an examination of Tolliver on November 3, 1993. Dr. Rasmussen conducted several tests that indicated that Tolliver had normal capabilities, including a pulmonary function test and an arterial blood-gas test. Dr. Rasmussen then performed incremental exercise testing, during which Tolliver initially performed normally. However, when Tolliver was tested for a longer period of time, there was such a precipitous drop in his "p02" level that he fell into the range of persons considered totally disabled. On the basis of the longer test, Dr. Rasmussen concluded that Tolliver was totally disabled. That finding was independently verified by Dr. Ranavaya, a physician employed by the Department of Labor.

Both ALJs concluded that the Rassmussen report qualifies Tolliver for benefits. The first ALJ found the report more persuasive than the other reports, even though he ultimately did not admit them. The second ALJ acknowledged that Rassmussen's report shows that Tolliver is totally disabled, but found Dr. Zaldivar's July 1 report and the reports of the doctors reviewing Zaldivar's report much more persuasive. Neither ALJ independently engaged in any fact finding as to Tolliver's condition. Given that P.G. & H's reports are not admissible and that both ALJ's acknowledge that the Rassmussen report shows Tolliver to be totally disabled, Tolliver is entitled to benefits.

CONCLUSION

To review, we hold that a claim is no longer pending before the District Director as of the date that the District Director transfers the

11

claim to the Office of Administrative Law Judges for further adjudication. Any evidence in a party's possession but not submitted before that date will not be admissible in later proceedings. See 20 C.F.R. 725.456. Since the reports P.G. & H. received in June and July, 1994 were in its possession before the transfer date but were not submitted to the District Director, those reports are inadmissible. Moreover, the reports originally submitted by Ranger incorporate the untimely evidence and rely heavily on it and therefore are inadmissible as well. As there is no competent evidence to rebut Dr. Rassmussen's finding of total disability, Tolliver has met his burden of proof and is entitled to benefits.

REVERSED

12